PAGES 1 – 90

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SAUNDRA BROWN ARMSTRONG, JUDGE


UNITED STATES OF AMERICA,    )
                               )
          PLAINTIFF,    )    NO. CR-11-00529 SBA
                               )
  VS.                   )    FRIDAY, MAY 4, 2012
                               )
CHRISTOPHER BUTLER,      )    OAKLAND, CALIFORNIA
                               )
          DEFENDANT.    )
_____)


**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFF:**          MELINDA L. HAAG, ESQUIRE
                             UNITED STATES ATTORNEY
                             1301 CLAY STREET, SUITE 340S
                             OAKLAND, CALIFORNIA  94612
                     BY:  HARTLEY M.K. WEST,
                             ASSISTANT UNITED STATES ATTORNEY


**FOR DEFENDANT:**          GAGEN, MCCOY, MCMAHON, KOSS,
                             MARKOWITZ & RAINES
                             279 FRONT STREET, SUITE 218
                             DANVILLE, CALIFORNIA 94526
                     BY:  WILLIAM GAGEN, ESQUIRE


**REPORTED BY:**          DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                             OFFICIAL COURT REPORTER

<u>FRIDAY, MAY 4, 2012</u>                                        <u>11:25 A.M.</u>

1

2                          P R O C E E D I N G S

3            **THE CLERK:**  CALLING CRIMINAL 11-529 UNITED STATES OF

4    AMERICA VERSUS CHRISTOPHER BUTLER.

5            COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE

6    RECORD.

7            **MS. WEST:**  GOOD MORNING, YOUR HONOR.  HARTLEY WEST

8    FOR THE UNITED STATES.

9            **THE COURT:**  GOOD MORNING.

10           **MR. GAGEN:**  GOOD MORNING, YOUR HONOR.  WILLIAM GAGEN

11   APPEARING WITH CHRISTOPHER BUTLER WHO IS PERSONALLY PRESENT.

12           **THE COURT:**  OKAY.  THE RECORD WILL SO REFLECT.

13           THIS IS ON FOR A CHANGE OF PLEA?

14           **MS. WEST:**  THAT'S CORRECT.

15           **THE COURT:**  OKAY.

16           MR. BUTLER, BEFORE I ACCEPT YOUR GUILTY PLEA, I AM

17   REQUIRED TO ASK YOU SOME QUESTIONS WHICH YOU MUST ANSWER UNDER

18   OATH.

19           IF YOU WOULD PLEASE RAISE YOUR RIGHT HAND TO BE

20   SWORN BY MADAME CLERK.

21                          (DEFENDANT SWORN.)

22           **THE DEFENDANT:**  I DO.

23           **THE COURT:**  MR. BUTLER, DO YOU UNDERSTAND THAT YOU

24   ARE NOW UNDER OATH?

25           **THE DEFENDANT:**  YES, YOUR HONOR.

1          **THE COURT:**  DO YOU UNDERSTAND THAT BECAUSE YOU ARE

2    UNDER OATH YOU MUST TELL THE TRUTH?

3          **THE DEFENDANT:**  YES, YOUR HONOR.

4          **THE COURT:**  DO YOU FURTHER UNDERSTAND THAT IF YOU DO

5    NOT TELL THE TRUTH, OR IF YOU PROVIDE FALSE STATEMENTS TO THE

6    COURT, THE UNITED STATES ATTORNEY MAY BRING ADDITIONAL CHARGES

7    AGAINST YOU WHICH WOULD CARRY PENALTIES IN ADDITION TO THOSE

8    YOU ARE CURRENTLY FACING?

9          **THE DEFENDANT:**  I UNDERSTAND, YOUR HONOR.

10          **THE COURT:**  THIS MORNING I AM GOING TO ASK YOU SOME

11    QUESTIONS TO MAKE SURE THAT YOU KNOWINGLY, VOLUNTARILY,

12    INTELLIGENTLY AND WITH THE ADVICE OF YOUR COUNSEL WANT TO ENTER

13    A GUILTY PLEA.  I AM ALSO GOING TO ASK YOU SOME QUESTIONS

14    CONCERNING THE CRIME YOU ARE PLEADING GUILTY TO, AND YOU WILL

15    BE REQUIRED TO ANSWER THOSE QUESTIONS.

16          IF YOU WOULD LIKE TO SPEAK WITH YOUR ATTORNEY AT ANY

17    TIME PRIOR TO ANSWERING ANY OF MY QUESTIONS, PLEASE FEEL FREE

18    TO DO SO.  IF YOU DON'T UNDERSTAND THE QUESTION I ASK YOU,

19    PLEASE TELL ME THAT YOU DON'T UNDERSTAND THE QUESTION AND I

20    WILL CLARIFY IT FOR YOU BEFORE YOU ARE REQUIRED TO ANSWER THE

21    QUESTION.  OKAY?

22          **THE DEFENDANT:**  YES, YOUR HONOR.

23          **THE COURT:**  WHAT IS YOUR FULL NAME?

24          **THE DEFENDANT:**  CHRISTOPHER BLAIR BUTLER.

25          **THE COURT:**  WHAT IS YOUR AGE?

| 1 | **THE DEFENDANT:**  50.  I AM SORRY. |

1        **THE DEFENDANT:**  50.  I AM SORRY.

2        **THE COURT:**  THAT'S OKAY.  WHAT IS THE HIGHEST

3   EDUCATIONAL LEVEL YOU HAVE ACHIEVED?

4        **THE DEFENDANT:**  BACHELOR'S DEGREE.

5        **THE COURT:**  LISA?

6        (DOCUMENT HANDED TO CLERK THEN COUNSEL.)

7        PUT THAT IN THE APPLICATION.  WHERE IT SAYS THE

8   HIGHEST EDUCATIONAL LEVEL, IT SHOULD BE BACHELOR'S DEGREE.

9            (DOCUMENT RETURNED TO COURT.)

10       THANK YOU.

11       CAN YOU READ AND WRITE ENGLISH?

12       **THE DEFENDANT:**  YES, YOUR HONOR.

13       **THE COURT:**  PRIOR TO COMING TO COURT TODAY, HAVE YOU

14   HAD ANY ALCOHOLIC BEVERAGES?

15       **THE DEFENDANT:**  NO, YOUR HONOR.

16       **THE COURT:**  WITHIN THE PAST 24 HOURS, HAVE YOU TAKEN

17   ANY DRUGS OR MEDICATIONS, WHETHER PRESCRIBED BY A PHYSICIAN OR

18   NOT?

19       **THE DEFENDANT:**  YES, YOUR HONOR.

20       **THE COURT:**  WHAT DRUGS OR MEDICATIONS HAVE YOU

21   TAKEN.

22       **THE DEFENDANT:**  ASMANEX INHALER FOR ASTHMA.  THERE'S

23   A HEART MEDICATION --

24       **THE COURT:**  BISOPROLOL FUMARATE?

25       **THE DEFENDANT:**  YES, YOUR HONOR.

1          **THE COURT:**  IS THAT IT?

2          **THE DEFENDANT:**  YES.

3          **THE COURT:**  ANY OTHER DRUGS OR MEDICATION?

4          **THE DEFENDANT:**  A LOW DOSE ASPIRIN.

5          **THE COURT:**  HERE LISA.

6              (DOCUMENT HANDED TO CLERK THEN COUNSEL.)

7          LET'S ADD THAT AS WELL.

8                  (DOCUMENT RETURNED TO COURT.)

9          **THE COURT:**  WHEN WAS -- WHEN DID YOU LAST TAKE THE

10   MEDICATIONS?

11          **THE DEFENDANT:**  THIS MORNING AT APPROXIMATELY SEVEN

12   A.M.

13          **THE COURT:**  SO YOU TAKE THEM ALL AT THE SAME TIME?

14          **THE DEFENDANT:**  YES, I DO.

15          **THE COURT:**  DO THESE MEDICATIONS HAVE ANY SIDE

16   EFFECTS FOR YOU EITHER INDIVIDUALLY OR COLLECTIVELY THAT WOULD

17   INTERFERE WITH YOUR ABILITY TO THINK CLEARLY, TO UNDERSTAND, TO

18   FOCUS?

19          **THE DEFENDANT:**  NO, YOUR HONOR.

20          **THE COURT:**  DO YOU, IN FACT, UNDERSTAND WHY WE ARE

21   HERE?

22          **THE DEFENDANT:**  YES, I DO, YOUR HONOR.

23          **THE COURT:**  ARE YOU SICK IN ANY WAY WHICH WOULD

24   PREVENT YOU FROM UNDERSTANDING WHAT'S GOING ON?

25          **THE DEFENDANT:**  NO, YOUR HONOR.

1          **THE COURT:**  DO YOU UNDERSTAND YOU HAVE A RIGHT TO

2     ENTER A NOT GUILTY PLEA AND TO PERSIST IN THAT NOT GUILTY PLEA?

3          **THE DEFENDANT:**  I UNDERSTAND, YOUR HONOR.

4          **THE COURT:**  DO YOU UNDERSTAND THAT IF YOU ENTER A

5     NOT GUILTY PLEA, YOU HAVE A RIGHT TO HAVE A TRIAL, A SPEEDY,

6     PUBLIC TRIAL BY A JURY COMPOSED OF 12 CITIZENS OF THIS

7     DISTRICT?

8          **THE DEFENDANT:**  I UNDERSTAND, YES.

9          **THE COURT:**  DO YOU UNDERSTAND THAT BEFORE A JURY MAY

10    CONVICT YOU, ITS DECISION MUST BE UNANIMOUS, WHICH MEANS ALL 12

11    PERSONS MUST AGREE BEFORE YOU ARE CONVICTED OF A CRIME.

12          DO YOU UNDERSTAND THIS?

13          **THE DEFENDANT:**  I UNDERSTAND, YOUR HONOR.

14          **THE COURT:**  AT THIS TRIAL, YOU HAVE THE RIGHT TO

15    HAVE AN ATTORNEY REPRESENT YOU, EITHER ONE RETAINED AND PAID

16    FOR BY YOU, OR IF YOU COULD NOT AFFORD A LAWYER, THE COURT

17    WOULD APPOINT THE LAWYER TO REPRESENT YOU AND THE GOVERNMENT

18    WOULD BEAR THE EXPENSE OF A LAWYER.

19          DO YOU UNDERSTAND THAT?

20          **THE DEFENDANT:**  YES, YOUR HONOR.

21          **THE COURT:**  YOU ALSO UNDERSTAND THAT YOU MAY WAIVE

22    COUNSEL AND REPRESENT YOURSELF AT THE TRIAL?

23          **THE DEFENDANT:**  I UNDERSTAND, YOUR HONOR.

24          **THE COURT:**  AT THIS TRIAL YOU WOULD BE PRESUMED TO

25    BE INNOCENT, WHICH PLACES THE BURDEN ON THE UNITED STATES

1    ATTORNEY TO PROVE YOUR GUILT BEYOND A REASONABLE DOUBT.

2              IN ORDER TO DO THAT, THE GOVERNMENT WOULD CALL

3    WITNESSES WHO WOULD APPEAR HERE AND TESTIFY IN OPEN COURT.  DO

4    YOU UNDERSTAND YOU HAVE THE RIGHT TO SEE AND ASK QUESTIONS OF

5    EACH OF THE GOVERNMENT'S WITNESSES.

6              **THE DEFENDANT:**  I DO, YOUR HONOR.

7              **THE COURT:**  DURING THIS TRIAL YOU ALSO HAVE A

8    CONSTITUTIONAL RIGHT TO REMAIN SILENT, WHICH MEANS DURING THE

9    TRIAL NO ONE COULD COMPEL OR REQUIRE YOU TO TESTIFY DURING THE

10   TRIAL, CALL OTHER PERSONS TO TESTIFY ON YOUR BEHALF, INTRODUCE

11   ANY EVIDENCE WHATSOEVER OR EVEN TO CROSS-EXAMINE THE

12   GOVERNMENT'S WITNESSES IF YOU CHOSE NOT TO.

13             DO YOU UNDERSTAND THAT?

14             **THE DEFENDANT:**  YES, I DO, YOUR HONOR.

15             **THE COURT:**  AND THE FACT THAT YOU CHOOSE TO EXERCISE

16   YOUR RIGHT TO REMAIN SILENT COULD NOT BE HELD AGAINST YOU,

17   WHICH MEANS THAT NEITHER THE JUDGE NOR THE JURY TRYING THE CASE

18   COULD INFER OR PRESUME THAT YOU ARE GUILTY SIMPLY BECAUSE YOU

19   CHOSE TO EXERCISE YOUR RIGHT TO REMAIN SILENT.

20             DO YOU UNDERSTAND THAT?

21             **THE DEFENDANT:**  YES, I DO, YOUR HONOR.

22             **THE COURT:**  ON THE OTHER HAND, YOU MAY DECIDE, AFTER

23   CONSULTATION WITH YOUR ATTORNEY, THAT IN ADDITION TO

24   CROSS-EXAMINING THE GOVERNMENT'S WITNESSES YOU MAY DECIDE TO

25   TESTIFY YOURSELF, TO CALL OTHER PERSONS TO TESTIFY ON YOUR

1    BEHALF, OR TO INTRODUCE SUCH OTHER EVIDENCE AS MAY BE PERMITTED

2    BY THE FEDERAL RULES OF EVIDENCE.

3                 DO YOU UNDERSTAND THAT?

4            **THE DEFENDANT:**  YES, I DO, YOUR HONOR.

5            **THE COURT:**  IF YOU HAD WITNESSES OR EVIDENCE THAT

6    YOU FELT WOULD BE OF SOME ASSISTANCE TO YOUR DEFENSE AND THE

7    WITNESSES WOULD NOT COME VOLUNTARILY OR THE EVIDENCE WAS NOT

8    READILY ACCESSIBLE TO YOU, YOU WOULD HAVE THE RIGHT TO USE THE

9    SUBPOENA POWERS OF THIS COURT TO COMPEL THE ATTENDANCE OF

10   WITNESSES AND/OR OTHER EVIDENCE ON YOUR BEHALF.

11                DO YOU UNDERSTAND THAT?

12           **THE DEFENDANT:**  YES, I DO, YOUR HONOR.

13           **THE COURT:**  HOWEVER, THE FACT THAT YOU CHOOSE TO

14   INTRODUCE EVIDENCE OF ANY KIND DOES NOT ALTER THE BURDEN OF

15   PROOF.  THE GOVERNMENT ALWAYS BEARS THE BURDEN OF PROVING YOUR

16   GUILT BEYOND A REASONABLE DOUBT ON EACH AND EVERY CHARGE

17   BROUGHT AGAINST YOU.

18                DO YOU UNDERSTAND THAT?

19           **THE DEFENDANT:**  YES, I DO, YOUR HONOR.

20           **THE COURT:**  DO YOU UNDERSTAND THAT BY ENTERING A

21   GUILTY PLEA YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL?

22           **THE DEFENDANT:**  I UNDERSTAND, YOUR HONOR.

23           **THE COURT:**  YOU ALSO UNDERSTAND YOU ARE GIVING UP

24   YOUR RIGHT TO APPEAL ANY JURY VERDICT OF CONVICTION BECAUSE

25   THERE WILL BE NO JURY VERDICT; YOU WILL BE CONVICTING YOURSELF

1    BY YOUR ADMISSION.

2             DO YOU UNDERSTAND THAT?

3             **THE DEFENDANT:**  I DO UNDERSTAND, YOUR HONOR.

4             **THE COURT:**  IN FACT, DO YOU UNDERSTAND THAT IF I

5    ACCEPT YOUR GUILTY PLEA, THERE WILL, IN FACT, BE NO TRIAL?

6             **THE DEFENDANT:**  I UNDERSTAND, YOUR HONOR.

7             **THE COURT:**  HAS ANYONE THREATENED YOU IN ANY WAY TO

8    MAKE OR FORCE YOU TO ENTER A GUILTY PLEA?

9             **THE DEFENDANT:**  NO, YOUR HONOR.

10            **THE COURT:**  ARE YOU PLEADING GUILTY TO PROTECT

11   ANYONE?

12            **THE DEFENDANT:**  NO.

13            **THE COURT:**  ARE YOU BEING PAID BY ANYONE TO ENTER A

14   GUILTY PLEA?

15            **THE DEFENDANT:**  NO.

16            **THE COURT:**  NOW YOU HAVE SIGNED AND ENTERED INTO A

17   PLEA AGREEMENT WITH THE GOVERNMENT; IS THAT CORRECT?

18            **THE DEFENDANT:**  THAT IS CORRECT.

19            **THE COURT:**  I HAVE BEEN HANDED TWO DOCUMENTS.  ONE

20   OF WHICH IS AN APPLICATION FOR PERMISSION TO ENTER A PLEA OF

21   GUILTY, WHICH IS DATED TODAY'S DATE.  AND ON PAGE 6 THERE IS A

22   SIGNATURE.

23            MR. BUTLER, WILL YOU LOOK AND TELL ME IF THIS IS

24   YOUR SIGNATURE ON THE APPLICATION?

25            **THE DEFENDANT:**  THAT IS MY SIGNATURE, YOUR HONOR.

1      **THE COURT:**  I HAVE ALSO BEEN HANDED A PLEA

2  AGREEMENT, WHICH IS ALSO DATED TODAY'S DATE.  AND ON PAGE 19

3  THERE IS A SIGNATURE AT THE TOP.

4      WILL YOU PLEASE LOOK AT THE PLEA AGREEMENT AND TELL

5  ME IF THIS IS YOUR SIGNATURE ON PAGE 19 OF THE PLEA AGREEMENT?

6      **THE DEFENDANT:**  THAT IS MY SIGNATURE, YOUR HONOR.

7      **THE COURT:**  THANK YOU.

8      DID YOU HAVE AN OPPORTUNITY TO READ THIS PLEA

9  AGREEMENT IN ITS ENTIRETY AND TO DISCUSS IT THOROUGHLY WITH

10  YOUR ATTORNEY BEFORE YOU SIGNED IT?

11      **THE DEFENDANT:**  YES, I DID.

12      **THE COURT:**  DOES THE PLEA AGREEMENT REPRESENT THE

13  ENTIRE AGREEMENT THAT YOU HAVE WITH THE GOVERNMENT?

14      **THE DEFENDANT:**  YES, IT DOES.

15      **THE COURT:**  DO YOU UNDERSTAND THE TERMS OF THE PLEA

16  AGREEMENT?

17      **THE DEFENDANT:**  YES, I DO.

18      **THE COURT:**  I AM JUST GOING TO GO OVER SOME OF THE

19  TERMS OF THE PLEA AGREEMENT WITH YOU.

20      DO YOU ALL HAVE A COPY?

21      **MR. GAGEN:**  WE HAVE COPIES, YOUR HONOR.

22      **THE COURT:**  SO YOU CAN FOLLOW ALONG.  I AM ON

23  PAGE 1.  I AM GOING TO GO OVER SOME OF THE TERMS OF THE PLEA

24  AGREEMENT.

25      FIRST OF ALL, THIS IS A PLEA AGREEMENT THAT IS

1    ENTERED INTO PURSUANT TO TWO DIFFERENT RULES OF THE FEDERAL

2    RULES OF CRIMINAL PROCEDURE.

3              TELL ME WHEN YOU HAVE IT.  DO YOU HAVE IT?

4         **MR. GAGEN:**  YES, WE BOTH HAVE IT, YOUR HONOR.

5         **THE COURT:**  THIS IS ENTERED INTO PURSUANT TO RULES

6    11(C)(1)(A) AND 11(C)(1)(B) OF THE FEDERAL RULES OF CRIMINAL

7    PROCEDURE.  STARTING WITH 11(C)(1)(A), THIS IS A PLEA AGREEMENT

8    THAT YOU HAVE ENTERED INTO WITH THE GOVERNMENT IN WHICH THE

9    GOVERNMENT HAS AGREED THAT IN EXCHANGE FOR YOUR PLEA OF GUILTY,

10   THAT THE GOVERNMENT WILL NOT FILE ANY ADDITIONAL CHARGES

11   AGAINST YOU THAT COULD BE FILED AS A RESULT OF THE

12   INVESTIGATION THAT LED TO THE SUPERSEDING INFORMATION, EXCEPT

13   CHARGES RELATING TO AN ACT OF PHYSICAL VIOLENCE AGAINST A

14   PERSON OF ANOTHER OR CONSPIRACY TO COMMIT SUCH AN ACT.

15             AND SO THAT IS ONE -- THAT IS WITH RESPECT TO

16   11(C)(1)(A).  THE COURT WOULD OBVIOUSLY HOLD THE GOVERNMENT TO

17   THAT PART OF ITS BARGAIN.  BUT IF THE COURT WERE UNABLE TO OR

18   IF THE GOVERNMENT WERE UNWILLING TO UPHOLD THAT PART OF THE

19   BARGAIN, THE COURT WOULD ALLOW YOU AN OPPORTUNITY TO WITHDRAW

20   YOUR GUILTY PLEA.

21             DO YOU UNDERSTAND THAT?

22        **THE DEFENDANT:**  YES, I DO, YOUR HONOR.

23        **THE COURT:**  THE SECOND SECTION IS 11(C)(1)(B) OF THE

24   FEDERAL RULES OF CRIMINAL PROCEDURE.  WHAT THAT MEANS IS THAT

25   YOU AND THE GOVERNMENT HAVE ENTERED INTO A PLEA AGREEMENT IN

1    WHICH YOU ARE ANTICIPATING THAT CERTAIN RECOMMENDATIONS WILL BE

2    MADE TO THE COURT.

3           DO YOU UNDERSTAND THAT?

4           **THE DEFENDANT:**  YES, I DO.

5           **THE COURT:**  I SEE IN THE PLEA AGREEMENT, CERTAIN

6    GUIDELINE CALCULATIONS AND OTHER INFORMATION IN THIS PLEA

7    AGREEMENT THAT RELATES TO RECOMMENDATIONS, SO IT APPEARS THAT

8    YOU WILL PROBABLY BE MAKING RECOMMENDATIONS CONCERNING THE

9    GUIDELINE, BUT THERE OBVIOUSLY ARE OTHER RECOMMENDATIONS THAT

10   YOU MAY BE MAKING.  BUT THE POINT THAT YOU NEED TO UNDERSTAND

11   WITH RESPECT TO THIS SECTION IS THAT THOSE ARE JUST

12   RECOMMENDATIONS.  AND RECOMMENDATIONS ARE JUST THAT,

13   RECOMMENDATIONS.

14          DO YOU UNDERSTAND THAT?

15          **THE DEFENDANT:**  I DO, YOUR HONOR.

16          **THE COURT:**  THAT MEANS THAT THE COURT MAY GRANT OR

17   DENY YOUR RECOMMENDATIONS AND YOU WILL NOT BE PERMITTED TO

18   WITHDRAW YOUR GUILTY PLEA.  WHETHER I ACCEPT OR REJECT THE

19   RECOMMENDATION, YOUR GUILTY PLEA WILL REMAIN.

20          DO YOU UNDERSTAND THAT?

21          **THE DEFENDANT:**  YES, I DO.

22          **THE COURT:**  I AM STILL ON PAGE 1 OF YOUR PLEA

23   AGREEMENT.

24          DO YOU UNDERSTAND THAT YOU ARE AGREEING TO PLEAD

25   GUILTY TO THE SUPERSEDING INFORMATION WHICH CHARGES YOU WITH,

IN COUNT ONE, CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE

AND TO DISTRIBUTE A SCHEDULE I CONTROLLED SUBSTANCE, MARIJUANA,

AND A SCHEDULED II CONTROLLED SUBSTANCE 50 GRAMS OR MORE OF

METHAMPHETAMINE IN VIOLATION OF TITLE 21, UNITED STATES CODE,

SECTIONS 846 AND 841(B)(1)(A)(8) AND 841(B)(1)(D).

DO YOU UNDERSTAND THAT YOU ARE AGREEING TO PLEAD

GUILTY TO THAT?

**THE DEFENDANT:**  YES, YOUR HONOR.

**THE COURT:**  YOU UNDERSTAND THAT THE MAXIMUM

PENALTIES WHICH MAY BE IMPOSED IN CONNECTION WITH THAT CRIME IS

A MAXIMUM PRISON SENTENCE OF UP TO LIFE AND A MANDATORY

MINIMUM -- THE WAY YOU ALL HAVE THIS WORDED; ARE YOU SUGGESTING

THAT THIS IS A MANDATORY MINIMUM?

**MS. WEST:**  IT IS, YOUR HONOR, A TEN-YEAR MANDATORY

MINIMUM.

**THE COURT:**  SO THE MAXIMUM PERIOD OF INCARCERATION

IS A PERIOD OF UP TO LIFE WITH A MANDATORY MINIMUM OF TEN

YEARS.

DO YOU UNDERSTAND THAT?

**THE DEFENDANT:**  YES, YOUR HONOR.

**THE COURT:**  A MAXIMUM FINE OF $10 MILLION, A MINIMUM

PERIOD OF SUPERVISED RELEASE OF FIVE YEARS.  WHAT'S THE MAXIMUM

SUPERVISED RELEASE, LIFE?

**MS. WEST:**  I BELIEVE THAT'S CORRECT, YOUR HONOR.

**MR. GAGEN:**  THERE'S DISCHARGE?

1          **THE COURT:**  WHAT'S THE MAXIMUM PERIOD OF SUPERVISED

2    RELEASE?  YOU ALL DON'T HAVE IT HERE.

3          MAXIMUM PERIOD OF SUPERVISED RELEASE?

4          **MR. GAGEN:**  OH.  FIVE YEARS, I BELIEVE.

5          **THE COURT:**  THAT'S THE MINIMUM.  SHE'S LOOKING IT

6    UP.

7                (PAUSE IN THE PROCEEDINGS.)

8          **MS. WEST:**  I BELIEVE THAT'S BOTH THE MAXIMUM AND THE

9    MINIMUM, YOUR HONOR.

10         **THE COURT:**  SO IT'S A MAXIMUM AND A MINIMUM?

11         **MS. WEST:**  IF THE COURT WOULD LIKE TO COME BACK TO

12   IT, I CAN LOOK IT UP IN THE INTERIM.

13         **THE COURT:**  LET ME GO THROUGH THE -- I WILL COME

14   BACK TO THE PENALTIES.

15         SO IN ADDITION TO PLEADING GUILTY TO COUNT ONE, DO

16   YOU UNDERSTAND THAT YOU ARE ALSO AGREEING TO PLEAD GUILTY TO

17   COUNT TWO, WHICH CHARGES YOU WITH AIDING AND ABETTING THEFT

18   FROM PROGRAMS RECEIVING FEDERAL FUNDS IN VIOLATION OF TITLE 18,

19   UNITED STATES CODE, SECTION 666(A)(1) AND (2).

20         DO YOU UNDERSTAND THAT?

21         **THE DEFENDANT:**  YES, YOUR HONOR.

22         **THE COURT:**  AND YOU ARE ALSO AGREEING TO PLEAD

23   GUILTY TO COUNTS THREE AND FOUR, WHICH CHARGES YOU WITH

24   CONSPIRACY AGAINST RIGHTS IN VIOLATION OF TITLE 18, UNITED

25   STATES CODE, SECTION 241.

1          DO YOU UNDERSTAND THAT?

2               **THE DEFENDANT:**  YES, YOUR HONOR.

3               **THE COURT:**  AND YOU ARE AGREEING TO PLEAD GUILTY TO

4    COUNT FIVE, WHICH CHARGES YOU WITH HOBBS ACT ROBBERY IN

5    VIOLATION OF TITLE 18, UNITED STATES CODE, SECTION 1951.

6          DO YOU UNDERSTAND THAT?

7               **THE DEFENDANT:**  YES, YOUR HONOR.

8               **THE COURT:**  AND WITH RESPECT TO COUNT SIX AND SEVEN,

9    YOU ARE AGREEING TO PLEAD GUILTY TO EXTORTION UNDER COLOR OF

10   OFFICIAL RIGHT IN VIOLATION OF TITLE 18, UNITED STATES CODE,

11   SECTION 1951.

12         DO YOU UNDERSTAND THAT?

13              **THE DEFENDANT:**  YES, YOUR HONOR.

14              **THE COURT:**  AND THEN FINALLY IN CONNECTION -- IN

15   COUNT EIGHT, YOU ARE AGREEING TO PLEAD GUILTY TO ILLEGAL

16   WIRETAPPING IN VIOLATION OF TITLE 18, UNITED STATES CODE,

17   SECTION 2511(1)(A) AND (4)(A).

18         DO YOU UNDERSTAND THAT?

19              **THE DEFENDANT:**  YES, YOUR HONOR.

20              **THE COURT:**  AND THEN WITH RESPECT TO THE MAXIMUM

21   PENALTIES WHICH MAY BE IMPOSED IN CONNECTION WITH THESE

22   CHARGES -- WERE YOU ABLE TO FIND THE INFORMATION ON COUNT ONE?

23              **MS. WEST:**  YES, YOUR HONOR.  IT'S FIVE YEARS TO LIFE

24   OF SUPERVISED RELEASE.

25              **THE COURT:**  SO, HERE, LISA, HAND THIS TO THEM AND

1    PUT THAT ON THERE, ON THE PLEA AGREEMENT.  THEN I WILL GO

2    THROUGH IT.

3            (DOCUMENT HANDED TO CLERK THEN COUNSEL AND RETURNED

4    TO THE COURT.)

5            **MR. GAGEN:**  I HAVE ADDED, YOUR HONOR, MINIMUM AND

6    MAXIMUM FIVE YEARS TO LIFE.

7            **THE COURT:**  THE MINIMUM IS ALREADY THERE.  IT JUST

8    NEEDS TO ADD MAXIMUM.

9            OKAY.  THANK YOU.

10           **MR. GAGEN:**  THANK YOU.

11           **THE COURT:**  SO, MR. BUTLER, DO YOU UNDERSTAND THE

12   MAXIMUM PENALTIES WHICH MAY BE IMPOSED IN CONNECTION WITH,

13   STARTING WITH COUNT ONE, IS A MAXIMUM PRISON SENTENCE OF UP TO

14   LIFE AND A MANDATORY MINIMUM PRISON SENTENCE OF TEN YEARS.

15           DO YOU UNDERSTAND THAT?

16           **THE DEFENDANT:**  YES, YOUR HONOR.

17           **THE COURT:**  A MAXIMUM FINE OF $10 MILLION, A MINIMUM

18   PERIOD OF SUPERVISED RELEASE OF FIVE YEARS AND A MAXIMUM PERIOD

19   OF SUPERVISED RELEASE OF LIFE, A MANDATORY SPECIAL ASSESSMENT

20   OF $100.

21           DO YOU UNDERSTAND THAT?

22           **THE DEFENDANT:**  YES, YOUR HONOR.

23           **THE COURT:**  AND THERE ARE ALSO CERTAIN MANDATORY AND

24   DISCRETIONARY DENIAL OF CERTAIN FEDERAL BENEFITS UPON

25   CONVICTION OF DRUG OFFENSES, WHICH THIS IS A DRUG OFFENSE.

1          DO YOU UNDERSTAND THAT?

2          **THE DEFENDANT:**  YES, YOUR HONOR.

3          **THE COURT:**  AND THEN FORFEITURE.

4          DO YOU UNDERSTAND THAT?

5          **THE DEFENDANT:**  YES, YOUR HONOR.

6          **THE COURT:**  AND YOU ARE INDICATING IN YOUR PLEA

7   AGREEMENT THAT YOU UNDERSTAND THAT YOU ARE CHARGED IN COUNT ONE

8   OF THE SUPERSEDING INFORMATION WITH AN OFFENSE THAT INVOLVES

9   50 GRAMS OR MORE OF METHAMPHETAMINE, AND THAT YOU UNDERSTAND

10  FURTHER THAT YOU HAVE THE RIGHT TO REQUIRE THE GOVERNMENT TO

11  PROVE TO A JURY BEYOND A REASONABLE DOUBT THE QUANTITY OF DRUGS

12  CHARGED IN COUNT ONE.  AND IF THE GOVERNMENT DID NOT MEET ITS

13  BURDEN OF PROVING THE QUANTITY OF DRUGS IN COUNT ONE, THEN

14  THESE PENALTIES THAT I HAVE JUST INDICATED IN CONNECTION WITH

15  COUNT ONE WOULD BE LOWERED.

16          DO YOU UNDERSTAND THAT?

17          **THE DEFENDANT:**  I DO.

18          **THE COURT:**  WITH RESPECT TO COUNT TWO, DO YOU

19  UNDERSTAND THAT THE MAXIMUM PENALTY WHICH MAY BE IMPOSED IN

20  CONNECTION WITH THAT CRIME IS A MAXIMUM PRISON OF TEN YEARS, A

21  MAXIMUM FINE OF $250,000, OR BOTH, A PERIOD OF SUPERVISED

22  RELEASE FOR UP TO THREE YEARS, A MANDATORY SPECIAL ASSESSMENT

23  OF $100.  AND THE COURT IS REQUIRED TO ORDER THAT YOU PAY

24  RESTITUTION TO ANY VICTIM THAT SUFFERED A LOSS AS A RESULT OF

25  YOUR CONDUCT.  AND IF THERE IS ANY RESTITUTION, THAT WILL BE IN

1    THE ORDER AS WELL.

2              DO YOU UNDERSTAND THAT?

3              **THE DEFENDANT:**  YES, YOUR HONOR.

4              **THE COURT:**  WITH RESPECT TO COUNTS THREE AND FOUR,

5    DO YOU UNDERSTAND THAT THE MAXIMUM PENALTY FOR EACH OF THOSE IS

6    A MAXIMUM PRISON SENTENCE OF UP TO TEN YEARS, A MAXIMUM FINE OF

7    $250,000, OR BOTH, A PERIOD OF SUPERVISED RELEASE FOR UP TO

8    THREE YEARS, A MANDATORY SPECIAL ASSESSMENT OF $100, AND ALSO,

9    AGAIN, RESTITUTION IF THAT IS TO BE -- IF THAT'S APPROPRIATE.

10             DO YOU UNDERSTAND THAT?

11             **THE DEFENDANT:**  YES, YOUR HONOR.

12             **THE COURT:**  WITH RESPECT TO COUNT FIVE, YOU

13   UNDERSTAND THAT THE MAXIMUM PENALTIES WHICH MAY BE IMPOSED IN

14   CONNECTION WITH THAT CHARGE IS A MAXIMUM PRISON SENTENCE OF 20

15   YEARS, A MAXIMUM FINE OF $250,000, OR BOTH, A PERIOD OF

16   SUPERVISED RELEASE FOR UP TO FIVE YEARS, A MANDATORY SPECIAL

17   ASSESSMENT OF $100, AND RESTITUTION, AGAIN, IF THAT IS

18   APPROPRIATE.

19             DO YOU UNDERSTAND THAT?

20             **THE DEFENDANT:**  YES, YOUR HONOR.

21             **THE COURT:**  AND THEN WITH RESPECT TO COUNT SIX AND

22   SEVEN, DO YOU UNDERSTAND THAT THE MAXIMUM PENALTY WHICH MAY BE

23   IMPOSED IN CONNECTION WITH THESE CHARGES ARE A MAXIMUM PRISON

24   SENTENCE OF 20 YEARS EACH, A MAXIMUM FINE OF $250,000, OR BOTH,

25   A MAXIMUM SUPERVISED RELEASE TERM OF FIVE YEARS, A MANDATORY

1    SPECIAL ASSESSMENT OF $100, AND RESTITUTION, AGAIN, IF THAT IS

2    APPROPRIATE.

3              DO YOU UNDERSTAND THAT?

4         **THE DEFENDANT:**  YES, YOUR HONOR.

5         **THE COURT:**  WITH RESPECT TO COUNT EIGHT, YOU

6    UNDERSTAND THAT THE MAXIMUM PENALTY WHICH MAY BE IMPOSED IN

7    CONNECTION WITH THIS COUNT IS A MAXIMUM PRISON SENTENCE OF UP

8    TO FIVE YEARS, A MAXIMUM FINE OF $250,000, OR BOTH, A PERIOD OF

9    SUPERVISED RELEASE FOR UP TO THREE YEARS, AND A MANDATORY

10   SPECIAL ASSESSMENT OF $100.

11             DO YOU UNDERSTAND THAT?

12        **THE DEFENDANT:**  YES, YOUR HONOR.

13        **THE COURT:**  IN ADDITION TO THE OTHER RIGHTS THAT I

14   HAVE ALREADY GONE OVER WITH YOU, IN YOUR PLEA AGREEMENT, YOU

15   ARE AGREEING TO GIVE UP THE FOLLOWING ADDITIONAL RIGHTS.  AND I

16   AM ON PAGE 11, STARTING WITH NUMBER 3, LINE 14.

17             YOU ARE AGREEING TO GIVE UP YOUR RIGHT TO MOVE TO

18   SUPPRESS EVIDENCE OR TO RAISE ANY OTHER FOURTH OR FIFTH

19   AMENDMENT CLAIMS, TO ANY FURTHER DISCOVERY FROM THE GOVERNMENT,

20   AND TO PURSUE ANY AFFIRMATIVE DEFENSES, AND PRESENT EVIDENCE.

21             DO YOU UNDERSTAND THAT?

22        **THE DEFENDANT:**  YES, YOUR HONOR.

23        **THE COURT:**  YOU ARE ALSO AGREEING TO WAIVE ANY

24   CHALLENGES TO VENUE, IF NECESSARY, BASED UPON THE CHARGES THAT

25   HAVE BEEN FILED IN THIS CASE.

```
1              DO YOU UNDERSTAND THAT?

2              THE DEFENDANT:  YES, YOUR HONOR.

3              THE COURT:  YOU ARE AGREEING TO GIVE UP YOUR RIGHT

4    TO APPEAL YOUR CONVICTION, THE JUDGMENT, AND ORDERS OF THE

5    COURT.  YOU ARE AGREEING TO WAIVE ANY RIGHT YOU MAY HAVE TO

6    APPEAL ANY ASPECT OF YOUR SENTENCE.

7              DO YOU UNDERSTAND THAT?

8              THE DEFENDANT:  YES, YOUR HONOR.

9              THE COURT:  YOU ARE AGREEING NOT TO FILE ANY

10   COLLATERAL ATTACK ON YOUR CONVICTION OR SENTENCE AT ANY TIME IN

11   THE FUTURE FOR THE DURATION OF YOUR SENTENCE, EXCEPT YOU DO

12   RESERVE YOUR RIGHT TO FILE A CLAIM THAT YOUR COUNSEL WAS

13   INEFFECTIVE IN CONNECTION WITH THE NEGOTIATION OF THIS

14   AGREEMENT OR THE ENTRY OF YOUR GUILTY PLEA.

15             DO YOU UNDERSTAND THAT?

16             THE DEFENDANT:  YES, YOUR HONOR.

17             THE COURT:  AND YOU ARE INDICATING THAT YOU

18   UNDERSTAND THAT THE GOVERNMENT MAY NOT PRESERVE ANY PHYSICAL

19   EVIDENCE OBTAINED IN THIS CASE.

20             DO YOU UNDERSTAND?

21             THE DEFENDANT:  YES.

22             THE COURT:  PAGE 12.

23             YOU ARE AGREEING THAT YOU WILL NOT ASK THE COURT TO

24   WITHDRAW YOUR GUILTY PLEA AT ANY TIME AFTER IT IS ENTERED, AND

25   YOU UNDERSTAND THAT BY ENTERING INTO THIS AGREEMENT THAT YOU
```

1    ARE AGREEING THAT THE FACTS SET FORTH IN PARAGRAPH 2 OF YOUR

2    PLEA AGREEMENT SHALL BE ADMISSIBLE AGAINST YOU IN ANY

3    SUBSEQUENT PROCEEDING, INCLUDING AT TRIAL IN THE EVENT YOU MOVE

4    TO WITHDRAW YOUR GUILTY PLEA.  AND YOU ARE EXPRESSLY WAIVING

5    ANY AND ALL RIGHTS WITH REGARD TO THE FACTS SET FORTH IN

6    PARAGRAPH 2 OF THIS AGREEMENT IN ANY SUCH SUBSEQUENT

7    PROCEEDING.

8              DO YOU UNDERSTAND THAT?

9              **THE DEFENDANT:**  YES, YOUR HONOR.

10             **THE COURT:**  I AM ON PAGE 15.  NUMBER 8 ON PAGE 15.

11             YOU ARE AGREEING THAT REGARDLESS OF ANY OTHER

12   PROVISION OF THIS AGREEMENT THAT THE GOVERNMENT WILL PROVIDE

13   THE COURT AND THE PROBATION OFFICE WITH ALL INFORMATION

14   RELEVANT TO THE CHARGED OFFENSES AND THE SENTENCING, AND YOU

15   ARE AGREEING THAT BASED UPON THE NATURE OF THE OFFENSE THE

16   COURT SHALL IMPOSE A SPECIAL SEARCH CONDITION OF YOUR

17   SUPERVISED RELEASE, WHICH YOU AGREE IS REASONABLY RELATED TO

18   DETERRENCE AND REHABILITATION.

19             DO YOU UNDERSTAND THAT?

20             **THE DEFENDANT:**  YES, YOUR HONOR.

21             **THE COURT:**  HAVE YOU HAD A CHANCE TO TALK WITH YOUR

22   LAWYER ABOUT THIS SPECIAL CONDITION?

23             **THE DEFENDANT:**  YES, I HAVE.

24             **THE COURT:**  YOU KNOW WHAT IT PROVIDES?

25             **THE DEFENDANT:**  YES, YOUR HONOR.

1          **THE COURT:**  NUMBER 9.

2          YOU ARE AGREEING TO PAY RESTITUTION FOR ALL THE

3    LOSSES CAUSED BY ALL THE SCHEMES OR OFFENSES WITH WHICH YOU

4    WERE CHARGED IN THIS CASE, AND YOU AGREE THAT THE AMOUNT OF

5    RESTITUTION WILL NOT BE LIMITED TO THE LOSS ATTRIBUTABLE TO THE

6    COUNTS TO WHICH YOU ARE PLEADING GUILTY.

7          DO YOU UNDERSTAND THAT?

8          **THE DEFENDANT:**  YES, YOUR HONOR.

9          **THE COURT:**  AND YOU ARE AGREEING THAT ANY FINE,

10   FORFEITURE, OR RESTITUTION IMPOSED BY THIS COURT AGAINST YOU

11   WILL BE IMMEDIATELY DUE AND PAYABLE AND SUBJECT TO IMMEDIATE

12   COLLECTION BY THE GOVERNMENT.

13         DO YOU UNDERSTAND THAT?

14         **THE DEFENDANT:**  YES, YOUR HONOR.

15         **THE COURT:**  AND YOU ARE AGREEING THAT YOU WILL MAKE

16   A GOOD FAITH EFFORT TO PAY ANY FINE, FORFEITURE, OR RESTITUTION

17   YOU ARE ORDERED TO PAY, AND THAT YOU WILL, UPON REQUEST OF THE

18   COURT, THE GOVERNMENT, OR THE PROBATION OFFICE, BEFORE OR AFTER

19   SENTENCING, PROVIDE ACCURATE AND COMPLETE FINANCIAL

20   INFORMATION.  YOU WILL SUBMIT SWORN STATEMENTS AND GIVE

21   DEPOSITIONS UNDER OATH CONCERNING YOUR ASSETS AND YOUR ABILITY

22   TO PAY, AND YOU WILL SURRENDER ASSETS YOU HAVE OBTAINED AS A

23   RESULT OF YOUR CRIMES, AND RELEASE FUNDS AND PROPERTY UNDER

24   YOUR CONTROL IN ORDER TO PAY ANY FINE, FORFEITURE, OR

25   RESTITUTION.

```
1              DO YOU UNDERSTAND THAT?

2              THE DEFENDANT:  YES, YOUR HONOR.

3              THE COURT:  AND YOU ARE AGREEING TO PAY THE SPECIAL

4    ASSESSMENT OF $800 AT THE TIME OF SENTENCING.

5              DO YOU UNDERSTAND THAT?

6              THE DEFENDANT:  YES, YOUR HONOR.

7              THE COURT:  PAGE 16, NUMBER 10.

8              YOU ARE AGREEING TO FORFEIT YOUR INTEREST IN THE

9    2005 HUMMER SUV VEHICLE WITH THE IDENTIFICATION NUMBER

10   5GRGN23U65H130916.

11             DO YOU UNDERSTAND THAT?

12             THE DEFENDANT:  YES, YOUR HONOR.

13             THE COURT:  YOU ARE AGREEING THAT THIS HUMMER SUV

14   WAS USED TO FACILITATE THE DRUG CONSPIRACY THAT IS CHARGED IN

15   COUNT ONE AND IS THUS FORFEITABLE TO THE UNITED STATES.  AND

16   THE PROCEDURES OUTLINED IN THE STATUTE UNDER 21, U.S.C.,

17   SECTION 853 AND UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 32.2.

18             DO YOU UNDERSTAND THAT?

19             THE DEFENDANT:  YES, YOUR HONOR.  IN YOUR PLEA

20   AGREEMENT, YOU ARE RELINQUISHING ALL RIGHT, TITLE, AND INTEREST

21   IN THE HUMMER SUV, AND YOU ARE AGREEING THAT SUCH RIGHT, TITLE,

22   AND INTEREST CAN BE FORFEITED TO THE UNITED STATES WITHOUT

23   FURTHER NOTICE TO YOU.  YOU ARE AGREEING THAT YOU WILL NOT

24   CONTEST ANY ADMINISTRATIVE OR JUDICIAL FORFEITURE PROCEEDING,

25   WHETHER THAT BE CRIMINAL, CIVIL, STATE, OR FEDERAL THAT MAY BE
```

```
1    BROUGHT AGAINST THE HUMMER SUV.

2              YOU ARE AGREEING NOT TO ASSIST ANY OTHER INDIVIDUAL

3    IN ANY EFFORT TO FALSELY CONTEST ITS FORFEITURE.  AND YOU ARE

4    AGREEING TO WAIVE ALL CONSTITUTIONAL AND STATUTORY CHALLENGES

5    IN ANY MANNER TO ANY FORFEITURE CARRIED OUT IN ACCORDANCE WITH

6    THIS AGREEMENT ON ANY GROUND.

7              DO YOU UNDERSTAND THAT?

8              THE DEFENDANT:  YES, YOUR HONOR.

9              THE COURT:  THEN YOU ARE AGREEING TO COOPERATE WITH

10   THE UNITED STATES ATTORNEY'S OFFICE BEFORE AND AFTER YOU ARE

11   SENTENCED.  AND ON PAGE 16, NUMBER 11, IT DETAILS FROM A

12   THROUGH G WHAT YOUR COOPERATION WILL INCLUDE, BUT NOT BE

13   LIMITED TO.

14             DO YOU UNDERSTAND THAT?

15             THE DEFENDANT:  YES, YOUR HONOR.

16             THE COURT:  HAVE YOU HAD AN ADEQUATE AMOUNT TO

17   DISCUSS A THROUGH G WITH YOUR ATTORNEY AND WHAT THAT ENTAILS?

18             THE DEFENDANT:  YES, I HAVE.

19             THE COURT:  SO YOU HAVE A CLEAR UNDERSTANDING OF

20   WHAT YOU ARE AGREEING TO IN THAT RESPECT?

21             THE DEFENDANT:  YES, I DO.

22             THE COURT:  OKAY.  PAGE 17.

23             YOU ARE AGREEING THAT THE GOVERNMENT'S DECISION

24   WHETHER TO FILE ANY MOTION AS DESCRIBED IN THE GOVERNMENT'S

25   PROMISE SECTION UNDER 5K1.1 AND/OR 18 U.S.C. SECTION 3553 IS
```

```
1   BASED ON THE GOVERNMENT'S SOLE AND EXCLUSIVE DECISION AS TO

2   WHETHER YOU HAVE PROVIDED SUBSTANTIAL ASSISTANCE.  AND WHATEVER

3   THE GOVERNMENT'S DECISION IS, THAT DECISION WILL BE BINDING ON

4   YOU.

5              DO YOU UNDERSTAND THAT?

6              THE DEFENDANT:  YES, YOUR HONOR.

7              THE COURT:  I AM ON PAGE 17, NUMBER 13.

8              YOU ARE AGREEING NOT TO HAVE ANY CONTACT WITH ANY

9   VICTIMS OR WITNESSES IN THIS CASE, EITHER DIRECTLY OR

10  INDIRECTLY BEFORE AND AFTER YOU ARE SENTENCED.

11             DO YOU UNDERSTAND THAT?

12             THE DEFENDANT:  YES, YOUR HONOR.

13             THE COURT:  THIS CONTACT INCLUDES, BUT IS NOT

14  LIMITED TO PERSONAL, TELEPHONIC, MAIL, ELECTRONIC MAIL, OR ANY

15  OTHER CONTACT.  IT INCLUDES ANY HARASSING, ANNOYING, OR

16  INTIMIDATING CONDUCT BY YOU DIRECTLY TO ANY VICTIMS OR

17  WITNESSES.

18             DO YOU UNDERSTAND THAT?

19             THE DEFENDANT:  YES, YOUR HONOR.

20             THE COURT:  YOU ARE AGREEING THAT THE COURT MAY ALSO

21  INCLUDE THIS NO CONTACT PROVISION AS A CONDITION OF YOUR

22  SUPERVISED RELEASE TERM.

23             DO YOU UNDERSTAND THAT?

24             THE DEFENDANT:  YES, YOUR HONOR.

25             THE COURT:  YOU ARE AGREEING THAT IF YOU FAIL TO
```

COMPLY WITH ANY PROMISES YOU HAVE MADE IN THIS AGREEMENT, THE

GOVERNMENT WILL BE RELEASED FROM ALL OF ITS PROMISES, BUT YOU

WILL NOT BE RELEASED FROM YOUR GUILTY PLEA.

        DO YOU UNDERSTAND THAT?

        **THE DEFENDANT:**  YES, YOUR HONOR.

        **THE COURT:**  AND YOU ARE AGREEING TO BE REMANDED TO

THE CUSTODY OF THE UNITED STATES MARSHAL IMMEDIATELY UPON

COMPLETION OF YOUR GUILTY PLEA.

        DO YOU UNDERSTAND THAT?

        **THE DEFENDANT:**  YES, YOUR HONOR.

        **THE COURT:**  IF YOU ARE PROSECUTED AFTER FAILING TO

COMPLY WITH ANY PROMISES YOU HAVE MADE IN THIS AGREEMENT, YOU

ARE AGREEING THAT ANY STATEMENTS YOU HAVE MADE TO ANY LAW

ENFORCEMENT OR OTHER GOVERNMENTAL AGENCY OR IN COURT, WHETHER

OR NOT MADE PURSUANT TO THIS, THE COOPERATION PROVISION OF THIS

AGREEMENT MAY BE USED IN ANY WAY, AND YOU ARE WAIVING ANY AND

ALL CLAIMS AGAINST THE UNITED STATES CONSTITUTION, FEDERAL RULE

OF CRIMINAL PROCEDURE, OR ANY OTHER FEDERAL, STATE, OR RULE TO

SUPPRESS OR RESTRICT THE USE OF YOUR STATEMENTS OR ANY LEADS

DERIVED FROM THOSE STATEMENTS.

        DO YOU UNDERSTAND THAT?

        **THE DEFENDANT:**  YES, YOUR HONOR.

        **THE COURT:**  AND YOU ARE ALSO WAIVING ANY DEFENSE TO

ANY PROSECUTION THAT IT IS BARRED BY A STATUTE OF LIMITATIONS,

IF THAT LIMITATIONS PERIOD HAS RUN BETWEEN THE DATE OF THE

1    AGREEMENT AND THE DATE YOU ARE INDICTED.

2              DO YOU UNDERSTAND THAT?

3              **THE DEFENDANT:**  YES, YOUR HONOR.

4              **THE COURT:**  AND YOU ARE AGREEING THAT THE GOVERNMENT

5    MAY REINSTATE ALL OF THE DISMISSED COUNTS AND INCLUDE ANY OTHER

6    CHARGES BY SUPERSEDING INDICTMENT SHOULD YOUR CASE BE REMANDED

7    TO DISTRICT COURT FOLLOWING AN APPEAL FOR ANY REASON.

8              DO YOU UNDERSTAND THAT?

9              **THE DEFENDANT:**  YES, YOUR HONOR.

10             **THE COURT:**  IN EXCHANGE FOR YOUR PLEA OF GUILTY, THE

11   GOVERNMENT AGREES NOT TO FILE ANY ADDITIONAL CHARGES AGAINST

12   YOU THAT COULD BE FILED AS THE RESULT OF THE INVESTIGATION THAT

13   LED TO THE SUPERSEDING INFORMATION EXCEPT CHARGES RELATING TO

14   AN ACT OF PHYSICAL VIOLENCE AGAINST A PERSON OF ANOTHER OR

15   CONSPIRACY TO COMMIT SUCH ACT.

16             DO YOU UNDERSTAND THAT?

17             **THE DEFENDANT:**  YES, YOUR HONOR.

18             **THE COURT:**  THE GOVERNMENT AGREES TO RECOMMEND THE

19   GUIDELINE CALCULATIONS THAT ARE SET FORTH IN YOUR PLEA

20   AGREEMENT UNLESS YOU VIOLATE THE TERMS OF YOUR AGREEMENT OR

21   FAIL TO ACCEPT RESPONSIBILITY.

22             DO YOU UNDERSTAND THAT?

23             **THE DEFENDANT:**  YES, YOUR HONOR.

24             **THE COURT:**  THE GOVERNMENT ALSO AGREES NOT TO USE

25   ANY STATEMENTS MADE BY YOU PURSUANT TO THIS AGREEMENT AGAINST

```
1    YOU UNLESS YOU FAIL TO COMPLY WITH ANY PROMISES IN THIS

2    AGREEMENT.

3              DO YOU UNDERSTAND THAT?

4         THE DEFENDANT:  YES, YOUR HONOR.

5         THE COURT:  AND THEN FINALLY, IF, IN ITS SOLE AND

6    EXCLUSIVE JUDGMENT, THE GOVERNMENT DECIDES THAT YOU HAVE

7    COOPERATED FULLY AND TRUTHFULLY PROVIDED SUBSTANTIAL ASSISTANCE

8    TO LAW ENFORCEMENT AUTHORITIES WITHIN THE MEANING OF GUIDELINE

9    SECTION 5K1.1 AND OTHERWISE COMPLY FULLY WITH THE AGREEMENT,

10   THE GOVERNMENT AGREES THAT IT WILL FILE WITH THE COURT A MOTION

11   UNDER GUIDELINE SECTION 5K1.1 AND/OR 18 U.S.C. SECTION 3553

12   THAT EXPLAINS THE NATURE AND EXTENT OF YOUR COOPERATION AND

13   RECOMMENDS A DOWNWARD DEPARTURE.

14             DO YOU UNDERSTAND THAT?

15        THE DEFENDANT:  YES, YOUR HONOR.

16        THE COURT:  NOW, ARE THOSE THE TERMS OF YOUR PLEA

17   AGREEMENT WITH THE GOVERNMENT AS YOU UNDERSTAND THEM?

18        THE DEFENDANT:  YES, YOUR HONOR.

19        THE COURT:  HAS ANYONE ELSE MADE ANY OTHER PROMISES

20   OR REPRESENTATIONS TO YOU THAT HAVE HAD ANY BEARING ON YOUR

21   DECISION TO CHANGE YOUR PLEA TO GUILTY THAT ARE NOT CONTAINED

22   IN THIS PLEA AGREEMENT?

23        THE DEFENDANT:  NO, YOUR HONOR.

24        THE COURT:  TO PUT IT MORE POSITIVELY, ARE ALL OF

25   THE PROMISES AND REPRESENTATIONS THAT HAVE BEEN MADE TO YOU AND
```

```
1    THAT HAVE HAD ANY BEARING ON YOUR DECISION TO CHANGE YOUR PLEA

2    TO GUILTY, ARE THEY ALL WRITTEN IN THIS PLEA AGREEMENT THAT

3    YOU'VE SIGNED AND ENTER INTO WITH THE GOVERNMENT?

4              THE DEFENDANT:  YES, YOUR HONOR.

5              THE COURT:  MR. GAGEN, IS THIS YOUR SIGNATURE ON THE

6    PLEA AGREEMENT?

7              MR. GAGEN:  YES, YOUR HONOR.

8              THE COURT:  HAVE YOU DISCUSSED THIS PLEA AGREEMENT

9    THOROUGHLY AND COMPLETELY WITH YOUR CLIENT, INCLUDING THE

10   PROVISION THAT RELATES TO WAIVER OF APPEAL?

11             MR. GAGEN:  YES.

12             THE COURT:  HAVE YOU DISCUSSED WITH YOUR CLIENT EACH

13   OF THE ELEMENTS REQUIRED TO SUPPORT A CONVICTION OF THE CRIMES

14   HE'S PLEADING GUILTY TO?

15             MR. GAGEN:  YES, I HAVE.

16             THE COURT:  HAVE YOU ANSWERED ALL OF YOUR CLIENT'S

17   QUESTIONS CONCERNING THIS PLEA AGREEMENT?

18             MR. GAGEN:  I BELIEVE SO.  YES.

19             THE COURT:  IN YOUR OPINION, DOES YOUR CLIENT

20   UNDERSTAND THIS PLEA AGREEMENT IN ITS ENTIRETY INCLUDING THE

21   PROVISION THAT RELATES TO WAIVER OF APPEAL?

22             MR. GAGEN:  YES.

23             THE COURT:  MR. BUTLER, DO YOU UNDERSTAND THAT THE

24   OFFENSES TO WHICH YOU ARE PLEADING GUILTY ARE FELONY OFFENSES?

25             THE DEFENDANT:  YES, YOUR HONOR.
```

1          **THE COURT:**  AND DO YOU FURTHER UNDERSTAND THAT IF

2     YOUR PLEA IS ACCEPTED, YOU WILL BE ADJUDGED GUILTY AND THAT

3     SUCH ADJUDICATION MAY DEPRIVE YOU OF CERTAIN VALUABLE CIVIL

4     RIGHTS, SUCH AS THE RIGHT TO VOTE, THE RIGHT TO HOLD PUBLIC

5     OFFICE, THE RIGHT TO SERVE ON A JURY, AND THE RIGHT TO POSSESS

6     ANY KIND OF A FIREARM?

7               **THE DEFENDANT:**  I UNDERSTAND, YOUR HONOR.

8               **THE COURT:**  DO YOU ALSO UNDERSTAND THAT UNDER THE

9     SENTENCING REFORM ACT OF 1984, THE UNITED STATES SENTENCING

10    COMMISSION HAS ISSUED GUIDELINES FOR COURTS TO CONSIDER IN

11    DETERMINING THE MOST APPROPRIATE SENTENCE IN A CRIMINAL CASE?

12              **THE DEFENDANT:**  I AM AWARE OF THAT, YOUR HONOR.

13              **THE COURT:**  HAVE YOU HAD AN ADEQUATE AMOUNT OF TIME

14    TO DISCUSS WITH YOUR ATTORNEY HOW THE GUIDELINES MIGHT APPLY TO

15    YOUR CASE?

16              **THE DEFENDANT:**  YES, YOUR HONOR.

17              **THE COURT:**  YOU UNDERSTAND THE COURT WILL NOT BE

18    ABLE TO DETERMINE SPECIFICALLY WHAT THE RECOMMENDED GUIDELINE

19    RANGE IS FOR YOUR CASE UNTIL AFTER THE PROBATION DEPARTMENT HAS

20    COMPLETED A PRESENTENCE REPORT AND YOU AND YOUR ATTORNEY AND

21    THE GOVERNMENT'S COUNSEL HAVE HAD A CHANCE TO RECEIVE THE

22    REPORT, TO REVIEW IT, AND TO CHALLENGE ANY FACTS THAT ARE

23    CONTAINED IN IT; IT WILL ONLY BE AFTER THAT PROCESS THAT I WILL

24    BE IN A POSITION TO UNDERSTAND WHAT THE RECOMMENDED GUIDELINE

25    RANGE IS.

1    DO YOU UNDERSTAND THAT?

2        **THE DEFENDANT:**  YES, YOUR HONOR.

3        **THE COURT:**  DO YOU ALSO UNDERSTAND THAT THE COURT

4    HAS THE -- THE GUIDELINES ARE ACTUALLY DISCRETIONARY AND THE

5    COURT CERTAINLY HAS THE AUTHORITY TO IMPOSE A SENTENCE THAT IS

6    EITHER MORE SEVERE OR LESS SEVERE THAN THAT NORMALLY

7    RECOMMENDED BY THE GUIDELINES.

8        DO YOU UNDERSTAND THAT -- DEPENDING ON THE

9    CIRCUMSTANCES.

10        DO YOU UNDERSTAND THAT?

11        **THE DEFENDANT:**  YES, YOUR HONOR.

12        **THE COURT:**  AND, FINALLY, DO YOU UNDERSTAND THAT THE

13    ACTUAL SENTENCE IMPOSED MAY BE DIFFERENT FROM ANY ESTIMATE

14    WHICH YOUR ATTORNEY HAS PROVIDED YOU?

15        **THE DEFENDANT:**  I UNDERSTAND, YOUR HONOR.

16        **THE COURT:**  IF YOU ARE SENTENCED TO PRISON, YOU WILL

17    NOT BE RELEASED ON PAROLE BECAUSE THERE IS NO LONGER A FEDERAL

18    PAROLING AGENCY.

19        DO YOU UNDERSTAND THAT?

20        **THE DEFENDANT:**  YES, YOUR HONOR.

21        **THE COURT:**  DO YOU ALL HAVE A COPY OF THE CHARGING

22    DOCUMENT?

23        **MR. GAGEN:**  YES.

24        **THE COURT:**  WOULD YOU LIKE ME TO HAVE IT READ OR DO

25    YOU WAIVE READING OF THE CHARGES?

1      **MR. GAGEN:**  WAIVE READING, YOUR HONOR.

2      **THE COURT:**  OKAY.

3      MR. BUTLER, DO YOU UNDERSTAND WHAT YOU ARE CHARGED

4  WITH IN THE SUPERSEDING INFORMATION?

5      **THE DEFENDANT:**  YES, I DO, YOUR HONOR.

6      **THE COURT:**  OKAY.  JUST A SECOND.

7      I AM GOING TO TAKE THEM ONE AT A TIME AND THEN HAVE

8  YOU DO THE ELEMENTS.

9      LET'S START WITH COUNT ONE.  TELL ME, IN YOUR OWN

10  WORDS, WHAT THE CHARGE IS, MR. BUTLER, IN COUNT ONE?  WHAT YOU

11  ARE CHARGED WITH?

12      **THE DEFENDANT:**  OKAY.  I WROTE IT OUT ON A PIECE OF

13  PAPER TO HELP ME --

14      **THE COURT:**  WHAT YOU ARE CHARGED WITH?

15      **THE DEFENDANT:**  -- TO ARTICULATE IT.  YES.

16      **THE COURT:**  YOU ALL SHOULD HAVE A COPY OF THE

17  SUPERSEDING INFORMATION IN FRONT OF YOU ALSO.

18      **THE DEFENDANT:**  YES.

19      **THE COURT:**  I AM NOT ASKING YOU TO TELL ME WHAT YOU

20  DID YET.  I AM JUST ASKING YOU TO TELL ME WHAT IS THE CHARGE.

21      **THE DEFENDANT:**  OKAY.  THE CHARGE IS CONSPIRACY TO

22  POSSESS WITH INTENT TO DISTRIBUTE AND TO DISTRIBUTE

23  METHAMPHETAMINE AND MARIJUANA.

24      **THE COURT:**  OKAY.

25      AND THEN, COUNSEL, WILL YOU PLEASE, FOR THE RECORD,

```
 1    PRESENT THE ELEMENTS OF THAT CHARGED OFFENSE?

 2              MS. WEST:  YES, YOUR HONOR.

 3              THE ELEMENTS OF THAT OFFENSE ARE, FIRST, THAT THERE

 4    WAS AN AGREEMENT BETWEEN TWO OR MORE PERSONS TO DISTRIBUTE

 5    MARIJUANA AND 50 GRAMS OR MORE OF METHAMPHETAMINE.

 6              AND, SECOND, THAT THE DEFENDANT JOINED IN THE

 7    AGREEMENT KNOWING OF ITS PURPOSE AND INTENDING TO HELP

 8    ACCOMPLISH THAT PURPOSE.

 9              THE COURT:  THANK YOU.

10              MR. BUTLER, DO YOU UNDERSTAND THE ELEMENTS OF THAT

11    OFFENSE?

12              THE DEFENDANT:  I DO, YOUR HONOR.

13              THE COURT:  SO LET'S -- COUNT TWO, TELL ME IN YOUR

14    OWN WORDS WHAT THE -- WHAT YOU ARE CHARGED WITH?

15              THE DEFENDANT:  COUNT TWO IS THEFT FROM PROGRAMS

16    RECEIVING FEDERAL FUNDS AND AIDING AND ABETTING.

17              THE COURT:  OKAY.

18              COUNSEL, PLEASE PRESENT THE ELEMENTS OF THE CHARGED

19    OFFENSE.

20              MS. WEST:  YES, YOUR HONOR.  THE ELEMENTS OF THAT

21    OFFENSE, COUNT TWO, ARE, FIRST, THAT SOMEONE WAS AN AGENT OF AN

22    ORGANIZATION OR OF A STATE OR LOCAL GOVERNMENT OR AGENCY

23    THEREOF WHICH RECEIVES MORE THAN $10,000 IN FEDERAL FUNDS

24    DURING ANY ONE-YEAR PERIOD.

25              TWO, THAT SOMEONE STOLE, OBTAINED BY FRAUD, OR
```

1    WITHOUT AUTHORITY KNOWINGLY CONVERTED TO THE USE OF SOMEONE

2    OTHER THAN THE RIGHTFUL OWNER PROPERTY.

3              THIRD, THAT THE PROPERTY IS VALUED AT $5,000 OR

4    MORE.

5              FOURTH, THAT THE PROPERTY IS OWNED BY OR UNDER THE

6    CARE, CUSTODY, OR CONTROL OF SUCH ORGANIZATION, GOVERNMENT, OR

7    AGENCY.

8              FIFTH, THAT THE DEFENDANT KNOWINGLY AND

9    INTENTIONALLY AIDED, COUNSELED, COMMANDED, INDUCED, OR PROCURED

10   THAT PERSON TO COMMIT EACH OF THE ABOVE ELEMENTS.

11             AND, SIXTH, THAT THE DEFENDANT ACTED BEFORE THE

12   CRIME WAS COMPLETED.

13             **THE COURT:**  OKAY.  THANK YOU.

14             MR. BUTLER, DO YOU UNDERSTAND THE ELEMENTS OF

15   COUNT TWO?

16             **THE DEFENDANT:**  I DO, YOUR HONOR.

17             **THE COURT:**  AND COUNT THREE, TELL ME IN YOUR -- JUST

18   TELL ME WHAT YOU ARE CHARGED WITH IN COUNT THREE.

19             **THE DEFENDANT:**  CONSPIRACY AGAINST RIGHTS.

20             **THE COURT:**  OKAY.  AND THAT'S ALSO WHAT YOU ARE

21   CHARGED WITH IN COUNT FOUR?

22             **THE DEFENDANT:**  THAT IS CORRECT, YOUR HONOR.

23             **THE COURT:**  OKAY.

24             SO, COUNSEL, WILL YOU PLEASE PROVIDE THE ELEMENTS OF

25   COUNTS THREE AND FOUR FOR THE RECORD?

1          **MS. WEST:**  YES.

2          FIRST, THE DEFENDANT KNOWINGLY AND INTENTIONALLY

3     CONSPIRED TO INJURE, OPPRESS, THREATEN, OR INTIMIDATE A PERSON

4     IN THE FREE EXERCISE OR ENJOYMENT OF A RIGHT OR PRIVILEGE

5     SECURED TO HIM OR HER BY THE CONSTITUTION OR UNITED STATES LAW.

6          AND, SECOND, THAT THE VICTIM WAS IN A STATE,

7     TERRITORY, COMMONWEALTH, POSSESSION, OR DISTRICT OF THE UNITED

8     STATES.

9          **THE COURT:**  THANK YOU.

10          MR. BUTLER, DO YOU UNDERSTAND THE ELEMENTS THAT ARE

11     CHARGED IN COUNTS THREE AND FOUR?

12          **THE DEFENDANT:**  YES, YOUR HONOR.

13          **THE COURT:**  SO NOW, COUNT FIVE, TELL ME IN YOUR OWN

14     WORDS WHAT YOU ARE CHARGED WITH -- WHAT THE CHARGE IS.

15          **THE DEFENDANT:**  COUNT FIVE IS THE HOBBS ACT,

16     ROBBERY.

17          **THE COURT:**  OKAY.

18          COUNSEL, WILL YOU PLEASE PROVIDE THE ELEMENTS OF

19     COUNT FIVE FOR THE RECORD?

20          **MS. WEST:**  THE ELEMENTS ARE, FIRST, THE DEFENDANT

21     KNOWINGLY INDUCED OR CONSPIRED TO INDUCE PERSONS TO PART WITH

22     PROPERTY BY THE WRONGFUL USE OF ACTUAL OR THREATENED FORCE,

23     VIOLENCE, OR FEAR.

24          SECOND, THE DEFENDANT ACTED WITH THE INTENT TO

25     OBTAIN THE PROPERTY.

1          AND, THIRD, INTERSTATE COMMERCE WAS OR WOULD HAVE

2    BEEN AFFECTED IN SOME WAY.

3              THE COURT:  THANK YOU.

4              MR. BUTLER, DO YOU UNDERSTAND THE ELEMENTS OF COUNT

5    FIVE?

6              THE DEFENDANT:  I DO, YOUR HONOR.

7              THE COURT:  OKAY.

8              AND, COUNSEL, PLEASE PRESENT -- NO, EXCUSE ME.

9              MR. BUTLER, PLEASE INDICATE IN YOUR OWN WORDS WHAT

10   THE CHARGE IS FOR COUNTS -- COUNT SIX AND SEVEN ARE THE SAME.

11             WHAT ARE YOU CHARGED WITH IN COUNTS SIX AND SEVEN?

12             THE DEFENDANT:  EXTORTION UNDER COLOR OF OFFICIAL

13   RIGHT.

14             THE COURT:  COUNSEL, IF YOU WILL PLEASE PRESENT THE

15   ELEMENTS OF COUNT SIX AND SEVEN.

16             MS. WEST:  YES.

17             THE ELEMENTS ARE, FIRST, THE DEFENDANT KNOWINGLY AND

18   INTENTIONALLY OBTAINED OR CONSPIRED TO OBTAIN PROPERTY THAT HE

19   KNEW HIS CO-CONSPIRATOR WAS NOT ENTITLED TO RECEIVE.

20             SECOND, THE CO-CONSPIRATOR WAS A PUBLIC OFFICIAL.

21             THIRD, THAT THE DEFENDANT KNEW THAT THE PROPERTY WAS

22   GIVEN IN RETURN FOR TAKING OR WITHHOLDING SOME OFFICIAL ACTION,

23   OR FOR AN EXPRESS PROMISE TO PERFORM A PARTICULAR OFFICIAL

24   ACTION.

25             AND, FOURTH, THAT COMMERCE WAS OR WOULD HAVE BEEN

1    AFFECTED IN SOME WAY.

2            AND TO BE CLEAR FOR THE RECORD, THE ELEMENTS ARE THE

3    SAME, BUT COUNT SIX SPECIFICALLY CHARGES THE SUBSTANTIVE COUNT

4    OF EXTORTION UNDER COLOR OF OFFICIAL RIGHT, WHILE COUNT SEVEN

5    CHARGES CONSPIRACY TO EXTORT UNDER COLOR OF OFFICIAL RIGHT.

6            AGAIN, THE ELEMENTS FOR BOTH CONSPIRACY AND THE

7    SUBSTANTIVE COUNT ARE IDENTICAL.

8            **THE COURT:**  THANK YOU.

9            DO YOU UNDERSTAND THAT, MR. BUTLER?

10           **THE DEFENDANT:**  YES, I DO.

11           **THE COURT:**  COUNT EIGHT, MR. BUTLER, IF YOU WILL

12   TELL ME IN YOUR OWN WORDS WHAT YOU ARE CHARGED WITH.

13           **THE DEFENDANT:**  COUNT EIGHT IS ILLEGAL WIRETAPPING.

14           **THE COURT:**  OKAY.

15           COUNSEL, IF YOU WILL PLEASE PROVIDE THE ELEMENTS OF

16   THE COUNT -- OF COUNT EIGHT FOR THE RECORD.

17           **MS. WEST:**  FIRST, THE DEFENDANT INTERCEPTED OR

18   ENDEAVORED TO INTERCEPT A WIRE OR ELECTRONIC COMMUNICATION.

19           AND, SECOND, THAT HE ACTED KNOWINGLY AND

20   INTENTIONALLY.

21           **THE COURT:**  MR. BUTLER, DO YOU UNDERSTAND THE

22   ELEMENTS OF COUNT EIGHT?

23           **THE DEFENDANT:**  YES, YOUR HONOR.

24           **THE COURT:**  HAVE YOU FULLY DISCUSSED ALL OF THESE

25   CHARGES AND THE CASE IN GENERAL WITH MR. GAGEN, YOUR ATTORNEY?

1          **THE DEFENDANT:**  YES, I HAVE.

2          **THE COURT:**  HAVE YOU HAD AN ADEQUATE AMOUNT OF TIME

3     TO DISCUSS WITH HIM THE POSSIBLE DEFENSES AND POSSIBLE

4     SENTENCES?

5          **THE DEFENDANT:**  YES, I HAVE.

6          **THE COURT:**  I AM GOING TO HAVE YOU NOW TELL ME IN

7     YOUR OWN WORDS WHAT YOU HAVE DONE WHICH MAKES YOU GUILTY OF

8     EACH OF THESE CRIMES.

9          I THINK I AM GOING TO START, JUST TAKE THEM ONE AT A

10    TIME, SINCE THEY ARE SO MANY OF THEM.

11         LET'S START WITH COUNT ONE.  TELL ME IN YOUR OWN

12    WORDS WHAT YOU HAVE DONE WHICH MAKES YOU GUILTY OF COUNT ONE,

13    THE CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE AND

14    DISTRIBUTE MARIJUANA AND METHAMPHETAMINE.

15         **THE DEFENDANT:**  OKAY.

16         BETWEEN NOVEMBER 2010 AND FEBRUARY 2011, I AGREED

17    WITH NORMAN WIELSCH TO DISTRIBUTE MARIJUANA, STEROIDS, AND

18    METHAMPHETAMINE.

19         WIELSCH PROVIDED ME WITH MARIJUANA, WHICH I GAVE TO

20    AN EMPLOYEE OF MINE.  WIELSCH LATER GAVE ME MORE MARIJUANA

21    ALONG WITH VIALS OF STEROIDS, WHICH I ALSO GAVE TO MY EMPLOYEE

22    TO SELL.

23         I GAVE WIELSCH MOST OF THE PROCEEDS OF THE SALES,

24    BUT ALSO GAVE MONEY TO MY EMPLOYEE AND KEPT SOME FOR MYSELF.

25         WIELSCH INFORMED ME THAT HE HAD TAKEN

METHAMPHETAMINE FROM AN EVIDENCE LOCKER THAT HE HAD WANTED TO

SELL.  I DROVE WIELSCH TO THE LOCATION OF THE METHAMPHETAMINE,

WHICH I ALSO GAVE TO MY EMPLOYEE TO SELL.  I ALSO KEPT SOME OF

MY METHAMPHETAMINE IN MY VEHICLE.  OVERALL 586 GRAMS OF

METHAMPHETAMINE WERE TAKEN FROM THE EVIDENCE LOCKER, AND

APPROXIMATELY ONE POUND OF THAT WAS SOLD FOR $9800.

**THE COURT:**  ALL RIGHT.  DID I MISS THE MARIJUANA,

WHAT YOU SAID ABOUT MARIJUANA?

**THE DEFENDANT:**  NO.  I MENTIONED THE MARIJUANA.

**THE COURT:**  YOU ARE CHARGED WITH CONSPIRACY TO

POSSESS WITH INTENT TO DISTRIBUTE AND TO DISTRIBUTE MARIJUANA.

**THE DEFENDANT:**  CORRECT.

AT THE BEGINNING, I STATED THAT WIELSCH PROVIDED ME

WITH MARIJUANA, WHICH I GAVE TO AN EMPLOYEE OF MINE.

**THE COURT:**  OKAY.  OKAY.

I AM TRYING TO DECIDE, YOU ALL HAVE STIPULATED TO --

WE WILL STILL GO THROUGH IT THIS WAY.

YOU DID COMMIT THIS CRIME IN COUNT ONE?

**THE DEFENDANT:**  THAT IS CORRECT, YOUR HONOR.

**THE COURT:**  THAT'S WHY YOU ARE PLEADING GUILTY TO

COUNT ONE?

**THE DEFENDANT:**  YES, YOUR HONOR.

**THE COURT:**  TELL ME IN YOUR OWN WORDS WHAT YOU HAVE

DONE THAT MAKES YOU GUILTY OF COUNT TWO WHICH CHARGES YOU WITH

AIDING AND ABETTING THEFT FROM PROGRAMS RECEIVING FEDERAL

```
 1   FUNDS.

 2          THE DEFENDANT:  OKAY.  I ACCOMPANIED NORMAN WIELSCH

 3   WHEN HE TOOK METHAMPHETAMINE IN CONTROL OF CNET THAT WAS WORTH

 4   OVER $30,000 FROM THE CONTRA COSTA COUNTY SHERIFF'S EVIDENCE

 5   FACILITY.

 6          IT IS MY UNDERSTANDING THAT CNET RECEIVES OVER

 7   $10,000 IN FEDERAL FUNDS OVER A PERIOD OF A YEAR.

 8          THE COURT:  SO YOU ARE SAYING YOU JUST WERE THERE?

 9          THE DEFENDANT:  I ACCOMPANIED HIM.  I DROVE HIM TO

10   THE LOCATION.

11          THE COURT:  OH, YOU DROVE HIM.

12          THE DEFENDANT:  YES.

13          THE COURT:  THAT'S DIFFERENT THAN ACCOMPANIED HIM.

14          SO YOU DROVE HIM TO THIS FACILITY FOR THAT PURPOSE?

15          THE DEFENDANT:  THAT IS CORRECT.

16          THE COURT:  OKAY.  AND YOU DID COMMIT THIS CRIME?

17          THE DEFENDANT:  THAT IS CORRECT.

18          THE COURT:  THAT'S WHY YOU ARE PLEADING GUILTY TO

19   IT?

20          THE DEFENDANT:  THAT IS CORRECT.

21          THE COURT:  OKAY.

22          TELL ME IN YOUR OWN WORDS WHAT YOU HAVE DONE WHICH

23   MAKES YOU GUILTY OF COUNTS THREE AND FOUR.

24          THE DEFENDANT:  IN RESPECT TO COUNT THREE --

25          THE COURT:  YES.
```

1          **THE DEFENDANT:**  -- IN JANUARY 2009, MY PRIVATE

2    INVESTIGATIONS FIRM WAS HIRED BY A MOTHER TO EXECUTE A STING

3    INVOLVING HER SON WHOM SHE SUSPECTED WAS SELLING DRUGS.

4          I ENLISTED NORMAN WIELSCH TO HELP ME WITH THIS

5    STING.  WE STAGED AN ARREST OF THE SON IN THE PARKING LOT OF

6    THE CNET OFFICES, DETAINED HIM IN HANDCUFFS, AND SEARCHED HIS

7    CAR AND HIS BEDROOM.  WE SEIZED XANAX PILLS THAT HE WAS SELLING

8    DURING THE SEARCHES.

9          I WAS PAID $3500 BY THE MOTHER FOR THE STING, AND

10   GAVE WIELSCH A THOUSAND DOLLARS OF THAT.

11          **THE COURT:**  OKAY.  WHAT WAS YOUR -- IN WHAT CAPACITY

12   WERE YOU DOING THAT, AS A PRIVATE CITIZEN?

13          **THE DEFENDANT:**  YES, YOUR HONOR.

14          **THE COURT:**  OKAY.  AND YOU DID COMMIT THIS CRIME?

15          **THE DEFENDANT:**  YES, I DID.

16          **THE COURT:**  THAT'S WHY YOU ARE PLEADING GUILTY TO

17   IT?

18          **THE DEFENDANT:**  YES, YOUR HONOR.

19          **THE COURT:**  SO COUNT FOUR?

20          **THE DEFENDANT:**  WITH RESPECT TO COUNT FOUR, I

21   ACCOMPANIED NORMAN WIELSCH ON APPROXIMATELY TEN OCCASIONS WHEN

22   HE DROVE TO MEET PROSTITUTES HE HAD IDENTIFIED THROUGH CRAIG'S

23   LIST AND OTHER SOURCES.

24          WE WOULD GO TO THE ROOMS WHERE THE PROSTITUTES WERE

25   WORKING.  I WOULD KNOCK ON THE DOOR, AND THEN NORMAN WIELSCH

1    WOULD PUSH HIMSELF IN BEHIND ME SHOWING HIS LAW ENFORCEMENT

2    BADGE.  WE WOULD THEN TAKE PROPERTY SUCH AS CELL PHONES AND

3    COMPUTERS WITHOUT PROVIDING ANY PROPERTY RECEIPTS OR ANY

4    CITATIONS.  AND I KEPT THE CELL PHONES IN MY OFFICE.

5         **THE COURT:**  OKAY.  AND YOU DID COMMIT THIS CRIME AS

6    WELL?

7         **THE DEFENDANT:**  YES, I DID.

8         **THE COURT:**  THAT'S WHY YOU ARE PLEADING GUILTY?

9         **THE DEFENDANT:**  THAT IS CORRECT, YOUR HONOR.

10        **THE COURT:**  SO COUNT FOUR -- EXCUSE ME, COUNT FIVE,

11   TELL ME IN YOUR OWN WORDS WHAT YOU HAVE DONE THAT MAKES YOU

12   GUILTY OF COUNT FIVE.

13        **THE DEFENDANT:**  WITH RESPECT TO COUNT FIVE, IN JULY

14   OR AUGUST OF 2010, I ACCOMPANIED NORMAN WIELSCH TO A HOTEL ROOM

15   IN SAN RAMON WHERE WE ENCOUNTERED A PROSTITUTE AND HER MADAME.

16   NORMAN WIELSCH AND I IDENTIFIED OURSELVES AS POLICE OFFICERS.

17   WE TOOK CASH, TWO CELL PHONES, AND CAR KEYS.

18        **THE COURT:**  AND YOU DID COMMIT THIS CRIME AS WELL?

19        **THE DEFENDANT:**  YES, YOUR HONOR.

20        **THE COURT:**  AND COUNTS -- WELL, SIX AND SEVEN ARE

21   THE SAME.  LET'S START WITH COUNT SIX.

22        **THE DEFENDANT:**  WITH RESPECT TO COUNT SIX, I AGREED

23   WITH NORMAN WIELSCH IN NOVEMBER OF 2009 TO ASSIST IN

24   ESTABLISHING A MASSAGE PARLOR THAT PROVIDED SEXUAL SERVICES

25   THAT WOULD BE PROTECTED BY WIELSCH'S STATUS AS COMMANDER OF

1    CNET.  BETWEEN NOVEMBER 2009 AND APRIL 2010, I COLLECTED OVER

2    $10,000 FROM THE MASSAGE PARLOR, WHICH WIELSCH AND I SHARED.

3              **THE COURT:**  WHEN YOU SAY YOU "COLLECTED", WHAT DO

4    YOU MEAN YOU COLLECTED?

5              **THE DEFENDANT:**  I PICKED UP AN ENVELOPE CONTAINING

6    MONEY FROM THE MASSAGE PARLOR AND DELIVERED IT TO NORMAN

7    WIELSCH.

8              **THE COURT:**  BUT WHAT PRECEDED -- YOU ARE CHARGED

9    WITH EXTORTION.  HOW DID YOU SET THIS UP?  WHAT WAS THE -- WHO

10   GAVE YOU THE MONEY AND WHY WERE THEY GIVING YOU MONEY?

11             **THE DEFENDANT:**  THEY WERE GIVING MONEY TO PAY FOR

12   THEIR RENT IN THE FACILITY.

13             **THE COURT:**  WAS THIS A FACILITY THAT YOU OWNED?

14             **THE DEFENDANT:**  NO.  I RENTED IT IN MY NAME.

15             **THE COURT:**  SO WHAT IS EXTORTION?  IF YOU -- IF IT'S

16   A FACILITY THAT YOU OWN, YOU ARE ENTITLED TO YOUR RENT, AREN'T

17   YOU?

18             MAYBE I AM NOT UNDERSTANDING WHAT YOU ARE SAYING.

19   TELL ME AGAIN WHAT YOU DID THAT MAKES YOU GUILTY OF COUNT SIX

20   WHICH CHARGES YOU WITH EXTORTION.

21             **THE DEFENDANT:**  CAN I TAKE A SECOND TO DISCUSS --

22             **THE COURT:**  YOU MAY.  ABSOLUTELY.

23             **THE DEFENDANT:**  THANK YOU.

24                  (PAUSE IN THE PROCEEDINGS.)

25                  (DEFENDANT AND DEFENSE COUNSEL CONFER.)

```
 1                **THE DEFENDANT:**  OKAY.  THE COLLECTION OF THE MONEY
 2      FOR THE RENT ALSO INCLUDED THE UNDERSTANDING THAT IT WAS FOR
 3      THE PROTECTION THAT NORMAN WIELSCH WOULD SUPPLY FOR THIS
 4      MASSAGE PARLOR.
 5                **THE COURT:**  SO IT WASN'T JUST RENT, IT WAS
 6      PROTECTION MONEY?
 7                **THE DEFENDANT:**  THAT IS CORRECT.
 8                **THE COURT:**  OKAY.  OKAY.
 9                AND SO TELL ME AGAIN WHAT YOU DID.  I WANT TO HEAR
10      THE REST OF IT AGAIN.  I WAS FOCUSING ON TRYING TO HEAR THE
11      EXTORTION AT FIRST.
12                **THE DEFENDANT:**  I UNDERSTAND.
13                WITH RESPECT TO COUNT SIX, I AGREED WITH NORMAN
14      WIELSCH IN NOVEMBER 2009 TO ASSIST IN ESTABLISHING A MASSAGE
15      PARLOR THAT PROVIDED SEXUAL SERVICES THAT WOULD BE PROTECTED BY
16      WIELSCH'S STATUS AS COMMANDER OF CNET.  SO IN BETWEEN
17      NOVEMBER 2009 AND APRIL 2010, I COLLECTED OVER $10,000 FROM THE
18      MASSAGE PARLOR WHICH WIELSCH AND I SHARED.
19                **THE COURT:**  THAT WAS FOR, IN PART FOR PROTECTION?
20                **THE DEFENDANT:**  THAT IS CORRECT, YOUR HONOR.
21                **THE COURT:**  YOU DID COMMIT THIS CRIME?
22                **THE DEFENDANT:**  YES, YOUR HONOR.
23                **THE COURT:**  THAT'S WHY YOU ARE PLEADING GUILTY TO
24      IT?
25                **THE DEFENDANT:**  YES, YOUR HONOR.
```

1    **THE COURT:**  TELL ME WHAT YOU DID IN COUNT SEVEN THAT

2  MAKES YOU GUILTY OF THIS CRIME.

3    **THE DEFENDANT:**  WITH RESPECT TO COUNT SEVEN, IN MY

4  PRIVATE INVESTIGATIONS FIRM, I WAS HIRED TO CONDUCT STINGS OF

5  HUSBANDS OR EX-HUSBANDS WHO ARE GOING THROUGH DIVORCE OR CHILD

6  CUSTODY PROCEEDINGS AND WHO WERE DESCRIBED TO ME AS HAVING A

7  TENDENCY TO DRINK AND DRIVE.

8    I SOLICITED -- I SOLICITED THE ASSISTANCE OF DEPUTY

9  SHERIFF STEPHEN TANABE.  I WOULD HAVE ONE OF MY EMPLOYEES MAKE

10  CONTACT IN A BAR WITH THE TARGET AND ENCOURAGE THE TARGET TO

11  DRINK.

12    WHEN THE TARGET LEFT THE BAR, AND IF IT WAS

13  DETERMINED THE TARGET WAS DRIVING WHILE OVER THE LEGAL LIMIT, I

14  WOULD NOTIFY TANABE WHO WOULD EITHER EFFECT AN ARREST OF THE

15  TARGET OR GET A FELLOW OFFICER TO DO IT.

16    AT TANABE'S REQUEST, I GAVE HIM .35 GRAMS OF COCAINE

17  AND LATER GAVE HIM A GLOCK HANDGUN FOR HIS HELP.

18    **THE COURT:**  SO WHAT'S THE EXTORTION?  WHERE'S THE

19  EXTORTION?

20    **THE DEFENDANT:**  MAY I SPEAK AGAIN?

21    **THE COURT:**  YES, YOU MAY.

22    (PAUSE IN THE PROCEEDINGS.)

23    (DEFENDANT AND DEFENSE COUNSEL CONFER.)

24    **THE DEFENDANT:**  IN GIVING DEPUTY SHERIFF STEPHEN

25  TANABE THE MONEY, IT WAS A CONSPIRACY IN WHICH HE WOULD THEN

```
 1   EFFECT AN ARREST ON AN INDIVIDUAL.

 2              THE COURT:  LET ME DO THIS FIRST.

 3              HOW MUCH MONEY -- I THOUGHT YOU SAID YOU GAVE HIM

 4   DRUGS AND A GLOCK.  YOU GAVE HIM MONEY AS WELL?

 5              THE DEFENDANT:  NO, I DID NOT GIVE HIM MONEY.

 6              THE COURT:  START OVER THEN.  WHAT WERE YOU ABOUT TO

 7   SAY?

 8              YOU SAID IN GIVING HIM MONEY?

 9              THE DEFENDANT:  I AM SORRY.  IF I SAID THAT, I WAS

10   MISTAKEN.

11              THE COURT:  DO YOU REMEMBER WHAT YOU DID?

12              THE DEFENDANT:  YES.

13              THE COURT:  OKAY.

14              THE DEFENDANT:  DEPUTY TANABE AGREED TO ASSIST WITH

15   THESE DUI STINGS.

16              THE COURT:  OKAY.

17              THE DEFENDANT:  IN EXCHANGE FOR HIS ASSISTANCE, HE

18   REQUESTED .35 GRAMS OF COCAINE AND A GLOCK HANDGUN, WHICH I

19   PROVIDED TO HIM.

20              THE COURT:  OKAY.  I AM WITH YOU SO FAR.

21              I AM JUST TRYING TO HEAR THE -- THE CHARGE IS

22   EXTORTION, RIGHT, IN THIS CHARGE?

23              MS. WEST:  UNDER COLOR OF OFFICIAL.  RIGHT, YOUR

24   HONOR.

25              THE COURT:  SO WHO -- WHERE IS THE EXTORTION IN WHAT
```

```
 1   HE JUST SAID?

 2             MS. WEST:  IF I MAY, YOUR HONOR.

 3             THE COURT:  I AM SAYING -- BECAUSE I AM WANTING TO

 4   KNOW WHAT HE THINKS HE DID THAT MAKES HIM GUILTY OF THIS CRIME.

 5             SO YOU CAN TALK WITH YOUR LAWYER --

 6             THE DEFENDANT:  YES.

 7             THE COURT:  AND YOU ALL CAN GO OVER THE FACTS AS HE

 8   HAS TOLD THEM TO YOU, BUT I NEED TO LISTEN TO SEE IF I AM

 9   HEARING THE LEGAL ELEMENTS OF THE CRIME.

10                  (PAUSE IN THE PROCEEDINGS.)

11             (DEFENDANT AND DEFENSE COUNSEL CONFER.)

12             MR. GAGEN:  I THINK THE PLEA AGREEMENT SAYS, YOUR

13   HONOR, IN EXCHANGE FOR TANABE MAKING DUI ARRESTS AND ARRANGING

14   FOR ANOTHER OFFICER TO MAKE --

15             THE COURT:  YOU ARE MUMBLING AND I DON'T UNDERSTAND

16   A WORD YOU ARE SAYING.

17             MR. GAGEN:  I AM SORRY.

18             THE COURT:  PULL THE MICROPHONE DOWN SO YOUR VOICE

19   CAN BE AMPLIFIED.

20             MR. GAGEN:  PARDON ME, YOUR HONOR.

21             THAT IN EXCHANGE FOR TANABE MAKING DUI ARRESTS AND

22   ARRANGING FOR ANOTHER OFFICER TO MAKE ARRESTS, BUTLER

23   COMPENSATED TANABE WITH COCAINE AND A FIREARM.

24             THE COURT:  OKAY.  I AM NOT AS CONCERNED ABOUT WHAT

25   THE PLEA AGREEMENT SAYS BECAUSE MANY PLEA AGREEMENTS ARE JUST
```

1    AS ERRONEOUS AS PEOPLE WHO ARE STANDING HERE TELLING ME WHAT

2    THEY HAVE DONE.

3            WHAT I AM LISTENING TO ARE THE FACTS AS HE'S SAYING

4    THAT HE -- WHAT HE DID COUPLED WITH MY UNDERSTANDING OF WHAT

5    THE ELEMENTS OF THE OFFENSE IS.

6            HE IS CHARGED WITH EXTORTION IN THIS PARTICULAR

7    COUNT.  NOT TO SAY THAT HE'S NOT GUILTY OF SOMETHING, BUT I AM

8    LISTENING FOR THE EXTORTION.

9            EXTORTION IS NOT PAYING SOMEBODY -- COMPENSATING

10   SOMEBODY FOR WHAT THEY HAVE DONE FOR YOU.  HE'S PROVIDED

11   SERVICE, I AM PROVIDING YOU WITH COMPENSATION.  THAT'S NOT

12   EXTORTION.

13           IF YOU WANT TO LOOK AT ANY DOCUMENT, LOOK AT THE

14   CHARGING DOCUMENT, THE SUPERSEDING INFORMATION ON PAGE 6, WHICH

15   DETAILS COUNT SEVEN.  AND THE CRITICAL LANGUAGE IS "DID

16   KNOWINGLY AND INTENTIONALLY CONSPIRE TO" -- WELL, "TO OBSTRUCT,

17   DELAY, AND EFFECT THE OBTAINING OF PROPERTY NOT DUE FROM

18   ANOTHER PERSON WITH HIS CONSENT IN EXCHANGE FOR MAKING AND

19   ARRANGING" WHATEVER.

20           SO, THIS SUGGESTS THAT HE IS EXTORTING PROPERTY FROM

21   SOMEONE.

22           **MS. WEST:**  I THINK, IF I MAY, YOUR HONOR, I THINK IT

23   MAY HELP THAT THIS IS -- COUNT SEVEN IS A CONSPIRACY CHARGE.

24           SO, WHAT I UNDERSTOOD MR. BUTLER TO BE SAYING IS

25   THAT HE ENTERED INTO AN AGREEMENT WITH MR. TANABE.  MR. TANABE

```
 1    WAS THE PUBLIC OFFICIAL.  MR. TANABE WAS NOT ENTITLED TO

 2    RECEIVE COMPENSATION IN THE FORM OF DRUGS AND A FIREARM FOR

 3    PERFORMING DUI ARRESTS, AND YET MR. TANABE DEMANDED IT AND

 4    MR. BUTLER PAID IT PER THEIR AGREEMENT TO DO SO.

 5             SO IN EXCHANGE FOR MR. TANABE PERFORMING HIS

 6    OFFICIAL DUTIES OF CONDUCTING ARRESTS, HE DEMANDED THAT

 7    MR. BUTLER PAY COMPENSATION.

 8             THE COURT:  SO YOU ARE SAYING THAT MR. TANABE THEN

 9    IS THE EXTORTER.  HE EXTORTED MONEY FROM THIS MAN.  SO WHY IS

10    HE PLEADING GUILTY TO EXTORTION?  HE SOUNDS LIKE THE VICTIM IN

11    THE SCHEME YOU JUST ARTICULATED.

12             MS. WEST:  YOUR HONOR, HE'S A CO-CONSPIRATOR IN IT

13    BECAUSE HE REACHED AN AGREEMENT WITH MR. TANABE TO MAKE THIS

14    HAPPEN.  SO HE PAID MR. TANABE --

15             THE COURT:  THERE'S SOMETHING A LITTLE ODD ABOUT

16    THAT BECAUSE ON THE ONE HAND, IF YOU ARE ARGUING THAT

17    MR. TANABE EXTORTED THINGS FROM HIM, YOU ARE NOT SUGGESTING

18    THAT HE'S A CO-CONSPIRATOR.

19             I DON'T KNOW THAT I HAVE EVER SEEN A CASE WHERE A

20    VICTIM OF AN EXTORTION HAS BEEN ALLEGED TO BE THE

21    CO-CONSPIRATOR OF HIS OWN EXTORTION.

22             MS. WEST:  ACTUALLY, THEY CAN BE BOTH A VICTIM AND A

23    CO-CONSPIRATOR, YOUR HONOR, AND IN THE NINTH CIRCUIT LAZARENKO

24    CASE, THE COURT SO HELD.  AND --

25             THE COURT:  I HAVE TO LOOK AT THAT ONE.  THAT'S--
```

1   THAT DOESN'T -- I AM NOT FAMILIAR WITH THAT AT ALL.  IT DOESN'T

2   EVEN SOUND LOGICAL, BUT IT COULD VERY WELL BE THE CASE.

3           IT'S JUST THAT IT -- THE WAY YOU JUST ARTICULATED

4   IT, I CAN UNDERSTAND THE EXTORTION IF IT WAS MR. TANABE WHO WAS

5   STANDING IN FRONT OF ME.  HE'S THE ONE EXTORTING.

6           YOU ARE SAYING THAT MR. -- AS FAR AS THIS PARTICULAR

7   COUNT, YOU ARE SAYING THAT MR. TANABE EXTORTED THINGS FROM

8   MR. BUTLER.

9           **MS. WEST:**  CORRECT.

10          **THE COURT:**  UNDER COLOR OF LAW, BUT THAT MR. BUTLER

11  WAS A CO-CONSPIRATOR IN THE EXTORTION.

12          **MS. WEST:**  THAT'S CORRECT.

13          THAT MR. BUTLER AND MR. TANABE AGREED TO THIS

14  EXTORTION.

15          I AM HAPPY TO PROVIDE THE LAZARENKO CITE TO THE

16  COURT AFTERWARDS, IF THE COURT WOULD LIKE.

17          **THE COURT:**  YEAH.  BEFORE I TAKE A PLEA ON THIS ONE,

18  I WOULD HAVE TO SEE THE AUTHORITY.

19          WHAT DO YOU WANT TO DO?  DO YOU WANT TO TAKE A

20  RECESS AND PROVIDE ME WITH THE CITE AND I WILL LOOK AT IT?

21          WHAT DO YOU WANT TO DO?  BECAUSE I AM NOT TAKING A

22  PLEA UNTIL I AM COMFORTABLE THAT WHAT YOU ARE SUGGESTING IS

23  EVEN LEGALLY PERMISSIBLE.

24          **MS. WEST:**  I AM HAPPY TO DO THAT, YOUR HONOR.  IT

25  WILL TAKE ME A FEW MINUTES.

```
1              THE COURT:  SO, WE WILL TAKE A RECESS AT COUNT

2    SEVEN.  WE HAVE ANOTHER CASE.  SO WE CAN PROBABLY JUST -- IS

3    THAT ONE --

4              MR. MATTHEWS:  I'M SORRY, YOUR HONOR, CAN WE

5    APPROACH THE DEPUTY FOR A MOMENT?

6              THE COURT:  YES.

7                   (PAUSE IN THE PROCEEDINGS.)

8              WE WILL BE IN RECESS FOR AT LEAST 15 MINUTES.  AND

9    YOU CAN TAKE YOUR BREAK, AND I'LL FIND OUT WHAT IS HAPPENING

10   WITH THEM.

11             MS. WEST:  THANK YOU, YOUR HONOR.

12             THE COURT:  GET THE CITE FOR THAT.

13             MS. WEST:  I WILL DO THAT RIGHT NOW.  THANK YOU.

14                  (RECESS TAKEN AT 12:20 P.M.)

15                  (PROCEEDINGS RESUMED AT 1:14 P.M.)

16             THE CLERK:  WE'RE BACK ON THE RECORD IN CRIMINAL

17   11-529 UNITED STATES OF AMERICA VERSUS CHRISTOPHER BUTLER.

18             THE COURT:  THE RECORD SHOULD REFLECT BOTH COUNSEL

19   ARE PRESENT, THE DEFENDANT IS PRESENT.

20             I DON'T KNOW, HAVE YOU ALL HAD A CHANCE TO READ THE

21   CASES THAT YOU ARE REFERRING TO?

22             MS. WEST:  I HAD ONLY PRINTED OUT ONE COPY, WHICH I

23   BROUGHT TO YOUR HONOR.  I HAVE -- I AM FAMILIAR WITH THE

24   LAZARENKO CASE AS I BRIEFED AND ARGUED SOME OF THE UNDERLYING

25   MATTERS IN IT.
```

1          **THE COURT:**  I DON'T THINK EITHER CASE THAT YOU GAVE

2    ME HAS ANYTHING TO DO WITH THE ISSUE THAT WE ARE DEALING WITH

3    NOW.

4          FIRST OF ALL, BOTH CASES ARE CASES IN A TOTALLY

5    DIFFERENT CONTEXT.  THEY WERE PROVIDED TO THE COURT, TO THE

6    NINTH CIRCUIT FOR THE PURPOSE OF DETERMINING WHETHER A PERSON

7    IS A VICTIM WITHIN THE CONTEXT OF A MANDATORY VICTIMS

8    RESTITUTION ACT.

9          THE LAZARENKO CASE, WHICH WAS THE CASE YOU FIRST

10   CITED, WAS THE ONE I LOOKED AT FIRST BECAUSE I RECEIVED THE

11   SECOND ONE LATER.  THAT WAS ALSO A RESTITUTION CASE.

12         THE LAZARENKO CASE WAS INTERESTING, BUT THE

13   CONSPIRACY THAT WAS INVOLVED IN THE MONEY LAUNDERING, WHAT

14   WAS -- WAS FOUND, AND THE ONLY WAY THEY EVEN DISCUSSED THE

15   POSSIBLE EXTORTION WAS BECAUSE DURING THE COURSE OF TRYING TO

16   DETERMINE WHETHER OR NOT HE WAS GUILTY OF MONEY LAUNDERING, THE

17   JURY HAD TO FIND THAT THE SOURCE OF THE MONEY THAT WAS BEING

18   LAUNDERED WAS ILLEGAL.  AND THEN THEY FOUND THAT HE HAD -- IT

19   WAS ILLEGAL BECAUSE HE HAD EXTORTED FROM KIRITCHENKO.  AND

20   KIRITCHENKO, THE DISTRICT COURT FOUND, WAS NOT A WILLING

21   PARTICIPANT IN IT AND THE NINTH CIRCUIT FOUND THAT THAT WAS NOT

22   CLEARLY ERRONEOUS.

23         BUT EVEN JUST LOOKING AT THE -- SO I DON'T EVEN KNOW

24   WHERE YOU GET FROM THAT CASE THAT THE COURT HAS FOUND THAT

25   UNDER CIRCUMSTANCES LIKE THIS, A PERSON CAN BE CHARGED WITH

EXTORTION.  EVEN WHEN YOU JUST LOOK AT THE BASIC ELEMENTS AND
THE BASIC STATUTE ITSELF, IT SAYS THAT, YOU KNOW, A PERSON WILL
CONSENT TO GIVING UP SOME PROPERTY OR MONEY BASED UPON EITHER
SOME USE OF FORCE OR THREAT OR UNDER COLOR OF OFFICIAL LAW.

THAT IS NOT WHAT IS HAPPENING HERE.  HE IS NOT BEING
INDUCED UNDER COLOR OF OFFICIAL LAW.  THIS IS A TRANSACTION IN
WHICH SOMEONE SOLICITED SOMEONE TO ENGAGE IN -- SOLICITED AN
OFFICER TO ENGAGE IN INAPPROPRIATE CONDUCT USING HIS OWN --
USING THE OFFICER'S APPARENT AUTHORITY, AND THEN HE PAID HIM IN
RESPONSE FOR THAT.

THE OFFICER IS NOT EXTORTING FROM MR. BUTLER UNDER
OFFICIAL OF LAW, THIS IS JUST AN AGREEMENT THEY MADE AND
HE'S -- IN COMPENSATION.

IF I CONSIDER, AND AS I AM THINKING ABOUT THIS, IF I
WERE TO EMBRACE THE ARGUMENT THAT YOU ARE MAKING, THAT MEANS
THAT ANY TIME A PERSON SOLICITS A POLICE OFFICER OR SOMEONE WHO
HAS SOME OFFICIAL AUTHORITY TO ENGAGE IN ILLEGAL CONDUCT IN
EXCHANGE FOR MONEY OR SOME OTHER FORM OF COMPENSATION, THEN
THAT PERSON CAN ALWAYS BE CHARGED WITH EXTORTING -- CONSPIRACY
TO COMMIT EXTORTION BASED UPON THAT OFFICER'S THEN TUNING
AROUND AND ACCEPTING WHATEVER THEY HAVE AGREED WOULD BE
COMPENSATION IN RESPONSE FOR THE CONDUCT.  AND IT JUST REALLY
TURNS THE EXTORTION STATUTE ON ITS HEAD.  I DON'T THINK IT'S
EVEN CLOSE TO BEING RELEVANT IN THIS CASE.

**MS. WEST:**  MAY I RESPOND, YOUR HONOR?

1          **THE COURT:**  YOU MAY.

2          **MS. WEST:**  OKAY.

3          FIRST, ADMITTEDLY, MY RECOLLECTION OF THE DETAILS OF

4    THE LAZARENKO CASE WERE DIFFERENT FROM -- AS I STARTED TO GO

5    BACK THROUGH IT.  SO, MY MEMORY HAD BEEN FUZZY AROUND THAT.  I

6    DO APOLOGIZE.  I WASN'T INTENDING TO MISREPRESENT ANY OF THE

7    FACTS TO THE COURT.

8          **THE COURT:**  THAT'S OKAY.  IT'S A SHORT CASE.  HAVE

9    YOU HAD A CHANCE TO READ IT SINCE --

10          **MS. WEST:**  UP TO THE POINT WHERE I LAST UNDERLINED

11   OR MARKED IT IS AS FAR AS I GOT, YOUR HONOR.

12          **THE COURT:**  I DON'T KNOW -- I DIDN'T READ THE CASE,

13   THE ONE THAT YOU GAVE US BECAUSE I HAD ALREADY FOUND IT BEFORE

14   YOU SENT IT TO US.

15          LET ME JUST TELL YOU, THE PERTINENT FACTS ARE:

16   APPARENTLY LAZARENKO WAS, IN HIS OFFICIAL CAPACITY, ENGAGED IN

17   BEHAVIOR THAT RESULTED IN THE REMOVAL OR ELIMINATION OF

18   KIRITCHENKO'S BUSINESS COMPETITORS.  AS A RESULT, KIRITCHENKO'S

19   BUSINESS PROFITED, AND HE THEN -- KIRITCHENKO THEN BEGAN PAYING

20   LAZARENKO MONEY.

21          THE FACTS ARE NOT ALL IN IT BECAUSE IT'S REALLY A

22   RESTITUTION CASE.  BUT AFTER HE PAID HIM THE MONEY, OVER A

23   PERIOD OF TIME THE GOVERNMENT EVENTUALLY CHARGED LAZARENKO WITH

24   MONEY LAUNDERING, WHICH THE JURY APPARENTLY FOUND HIM GUILTY

25   OF, BUT THE COURT FOUND THAT THE GOVERNMENT NEEDED TO PROVE

1    THAT THE MONEY THAT WAS BEING LAUNDERED WAS ILLEGAL, FROM AN

2    ILLEGAL SOURCE.

3          AND SO THEY WERE ABLE TO PROVE THAT THE MONEY -- IT

4    WASN'T AN ILLEGAL SOURCE BECAUSE HE WAS RECEIVING THE MONEY

5    FROM KIRITCHENKO, WHICH WERE THE PROFITS, YOU KNOW, THE

6    KICKBACKS THAT KIRITCHENKO WAS PAYING HIM.

7          BUT THE DISTRICT COURT ALSO MADE A SPECIFIC FINDING

8    THAT KIRITCHENKO WAS NOT A WILLING PARTICIPANT, AND THE NINTH

9    CIRCUIT FOUND THAT THAT WAS NOT CLEARLY ERRONEOUS.

10         BOTH CASES EVENTUALLY CONCLUDED THAT FOR PURPOSES OF

11   THE MANDATORY VICTIMS RESTITUTION ACT, NEITHER ONE OF THEM WERE

12   VICTIMS -- WERE -- WHO WERE PARTICIPANTS WERE VICTIMS.

13         **MS. WEST:**  THAT'S CORRECT.  WHAT I --

14         **THE COURT:**  SO WHAT I AM TRYING TO FIGURE OUT IS

15   WHAT MAKES YOU THINK THAT EITHER ONE OF THESE CASES STAND FOR

16   THE PROPOSITION THAT YOU CAN CHARGE A PERSON WITH BEING A

17   CO-CONSPIRATOR TO EXTORTION BASED UPON THE FACTS THAT WE HAVE

18   IN FRONT OF US HERE?

19         **MS. WEST:**  WHAT I WOULD DRAW THE COURT'S ATTENTION

20   TO HERE IS THAT MR. BUTLER, BY HIS OWN ADMISSIONS, ENTERED INTO

21   AN AGREEMENT WITH THIS POLICE OFFICER --

22         **THE COURT:**  RIGHT.

23         **MS. WEST:**  -- TO PAY -- THE AGREEMENT, WHILE IT

24   CHANGED, IT CHANGED TO DRUGS, WHICH WERE ACTUALLY PAID --

25         **THE COURT:**  IT DOESN'T MATTER WHAT THE COMPENSATION

1   IS.

2           **MS. WEST:**  THAT'S CORRECT.

3           THAT THIS WAS -- MR. BUTLER REALLY WASN'T THE VICTIM

4   OF THIS AGREEMENT.  MR. BUTLER WAS THE PERSON PERFORMING THE

5   COMPENSATION, BUT THIS WAS AN AGREEMENT THAT MR. BUTLER AND

6   MR. TANABE REACHED, AND THAT IT MEETS THE ELEMENTS OF EXTORTION

7   UNDER COLOR OF OFFICIAL RIGHT.

8           **THE COURT:**  HOW?

9           **MS. WEST:**  BECAUSE MR. BUTLER KNOWINGLY AND

10  INTENTIONALLY CONSPIRED TO OBTAIN PROPERTY, DRUGS, AND A GUN,

11  THAT HE KNEW MR. TANABE WAS NOT ENTITLED TO RECEIVE.

12          **THE COURT:**  WAIT.  YOU SAID HE CONSPIRED TO OBTAIN

13  PROPERTY, THE DRUGS, AND THE GUN.  HE WAS THE ONE THAT GAVE THE

14  DRUGS AND THE GUN TO MR. TANABE, RIGHT?

15          **MS. WEST:**  THAT'S RIGHT.

16          **THE COURT:**  HOW IS HE CONSPIRING TO OBTAIN PROPERTY

17  THAT HE'S GIVING TO MR. TANABE?  ARE YOU SAYING THAT MR. TANABE

18  IS CONSPIRING TO OBTAIN PROPERTY FROM HIM BASED UPON THE

19  AGREEMENT THAT THEY HAVE THAT MR. TANABE WOULD ENGAGE IN THIS

20  BEHAVIOR?

21          **MS. WEST:**  YES.  THE TWO ARE CONSPIRING TOGETHER FOR

22  MR. BUTLER TO PROVIDE DRUGS AND A GUN TO MR. TANABE FOR

23  MR. TANABE TO PERFORM ARRESTS AS PART OF HIS OFFICIAL DUTIES.

24          **THE COURT:**  SO ARE YOU SAYING THAT -- SO WHERE IS

25  THE INDUCEMENT -- I AM NOT CLEAR AS TO WHAT YOU ARE ARGUING.

1          YOU ARE SAYING THAT THE INDUCEMENT IS NOT TO

2     MR. BUTLER, IT'S TO THE CITIZENS THAT ARE PULLED OVER

3     ILLEGALLY?

4          **MS. WEST:**  THE -- ARE YOU TALKING ABOUT THE

5     INDUCEMENT TO MAKE THE COMPENSATION?

6          **THE COURT:**  I AM NOT UNDERSTANDING -- I JUST DON'T

7     THINK THIS IS AN EXTORTION -- CONSPIRACY TO COMMIT EXTORTION.

8     I DON'T SEE IT.

9          BUT, YOU KNOW, WHAT, MAYBE YOU CAN FIND SOME BETTER

10    AUTHORITY THAN YOU HAVE GIVEN ME.  THE TWO CASE YOU GAVE ME

11    WERE RESTITUTION CASES, AND THEY WERE NOT AT ALL RELEVANT.

12         WE CAN PUT THIS OVER.  I AM NOT GOING TO TAKE A PLEA

13    ON SOMETHING THAT I DON'T THINK IS LEGALLY SUSTAINABLE.  IF YOU

14    WANT TO PUT THIS OVER, I AM CERTAINLY HAPPY TO DO THAT, AND WE

15    CAN JUST -- WE CAN PICK UP WHERE WE LEFT OFF.  BUT I AM NOT

16    GOING TO DO IT TODAY.

17         SO YOU ALL CAN DECIDE WHAT YOU WANT TO DO.

18         **MR. GAGEN:**  YOUR HONOR, MAY I OFFER AN OBSERVATION?

19         **THE COURT:**  YES, I GUESS YOU CAN.

20         **MR. GAGEN:**  AND I DON'T WANT TO SOUND LIKE A

21    PROSECUTOR, BUT I THINK THAT AS MR. BUTLER WROTE OUT IN HIS

22    STATEMENT AND AS HE READ, THAT IN HIS INVESTIGATION BUSINESS,

23    HE WAS HIRED TO CONDUCT STINGS OF HUSBANDS OR EX-HUSBANDS WHO

24    WERE GOING THROUGH A DIVORCE.

25         **THE COURT:**  KEEP YOUR VOICE UP.

1          **MR. GAGEN:**  I'M SORRY.  IS THIS ON?

2          **THE COURT:**  YES, IT'S ON, BUT WHEN YOU TURN YOUR

3     HEAD --

4          **MR. GAGEN:**  OKAY.

5          WHO WERE GOING THROUGH DIVORCES.  AND ACTUALLY, A

6     WAY OF THINKING, IN MY MIND, BECAUSE CLEARLY THERE WAS

7     SOMETHING ILLEGAL ABOUT THIS COURSE OF CONDUCT.  I DON'T THINK

8     THERE IS ANY QUESTION ABOUT THAT.

9          THIS CHARGE MAKES SENSE BECAUSE THE VICTIMS OF THE

10    EXTORTION WERE THE MEN WHO WERE ARRESTED.  AND BECAUSE OF THE

11    ARREST BY TANABE, OR FOR THAT MATTER ANY OTHER OFFICER THAT WAS

12    PART OF THIS, HAD THEIR PROPERTY RIGHTS AND THEIR FINANCIAL

13    INTEREST COMPROMISED IN A FAMILY LAW CASE THAT WAS AT THAT

14    POINT SET --

15         **THE COURT:**  YOU KNOW YOUR ARGUMENT IS DIFFERENT THAN

16    WHAT THE GOVERNMENT IS ARGUING?

17         **MR. GAGEN:**  I KNOW.

18         **THE COURT:**  YOU ARE ARGUING TWO DIFFERENT --

19         **MR. GAGEN:**  I THINK IT'S ANOTHER THEORY, AND UPON

20    REFLECTION AS TO WHAT THE COURT SAID, I HAVE COME TO THE

21    CONCLUSION, AND MY COLLEAGUES WHO ARE HERE, THAT WHEN YOU LOOK

22    AT THE -- WHAT'S THE GOAL OF THE CONSPIRACY?

23         **THE COURT:**  RIGHT.  I THINK YOUR THEORY WOULD BE A

24    LITTLE EASIER TO FATHOM BECAUSE WHAT YOU ARE SAYING IS THAT

25    MR. TANABE, UNDER COLOR OF LAW, IS EXTORTING MONEY FROM A

```
1    PRIVATE CITIZEN -- EXTORTING SOMETHING FROM A PRIVATE CITIZEN,

2    AND YOUR CLIENT IS CONSPIRED WITH HIM TO DO THAT.  THAT'S MAKES

3    SENSE.

4              THAT'S NOT WHAT SHE'S SAYING.  SHE IS SAYING THAT

5    MR. TANABE HAS BEEN PAID -- IS BEING PAID BY YOUR CLIENT TO

6    STOP THESE PEOPLE, AND NOT EXTORT THINGS FROM THEM, BUT THE

7    EXTORTION IS WHAT YOUR CLIENT IS PAYING HIM IN RESPONSE FOR HIS

8    ENGAGING IN THE BEHAVIOR THAT HE'S SOLICITED HIM TO DO.  AND

9    THAT MAKES HIM A CONSPIRACY TO EXTORTION.

10             SEE, WHAT YOU ARE SAYING MAKES SENSE, IF THAT'S WHAT

11   YOUR THEORY IS.  BECAUSE THAT'S THE WAY EXTORTION NORMALLY

12   HAPPENS.

13             **MR. GAGEN:**  YES.

14             **THE COURT:**  YOU HAVE A PERSON WHO, UNDER COLOR OF

15   LAW, GOES TO A PRIVATE CITIZEN AND THEY -- YOU EXERT THEIR

16   AUTHORITY AND TAKE SOMETHING THAT THEY ARE NOT ENTITLED TO, BUT

17   THE PERSON RELINQUISHES BECAUSE OF THE AUTHORITY.

18             THAT MAKES SENSE.  BUT THAT'S NOT WHAT I AM BEING

19   TOLD.  WHAT I AM BEING TOLD IS THE THEORY IS, THE ARGUMENT IS

20   BASED UPON THE GUN AND THE DRUGS THAT YOUR CLIENT IS GIVING

21   MR. TANABE, THAT THE DRUGS AND THE GUNS ARE OSTENSIBLY GIVEN TO

22   HIM IN EXCHANGE UNDER -- INDUCED UNDER COLOR OF AUTHORITY.

23             IS THAT WHAT YOUR ARGUMENT IS?

24             **MS. WEST:**  THAT IS HOW THE GOVERNMENT HAD BEEN

25   THINKING ABOUT THE THEORY.  I UNDERSTAND WHAT MR. BUTLER IS
```

1  SAYING, AND THAT'S A BROADER VIEW OF THE THEORY THAN HAD BEEN

2  ANTICIPATED IN THE PHRASING OF THE PLEA.

3  **THE COURT:**  I DON'T KNOW WHAT THE FACTS ARE.  YOU

4  ALL KNOW WHAT THE FACTS ARE.

5  THE FACTS ARE THAT MR. TANABE WENT, AND PART OF

6  THEIR AGREEMENT WAS MR. TANABE WOULD GO TO THESE PRIVATE

7  CITIZENS, PULL THEM OVER AND TAKE SOME OF THEIR PROPERTY, AND

8  HE WAS PART OF THAT SCHEME; THAT'S KIND OF YOUR RUN-OF-THE-MILL

9  EXTORTION.  AND THAT'S FINE.

10  I HAVE NEVER HEARD THIS THEORY ARTICULATED THE WAY

11  THE GOVERNMENT IS ARTICULATING IT.  AND, YOU KNOW, YOU MAY BE

12  RIGHT.  THE CASES YOU'VE SENT ME HAVE NO RELEVANCE AT ALL TO

13  THIS ISSUE.

14  AND WHAT I AM SAYING IS THAT IF THERE IS SOME

15  AUTHORITY SOMEWHERE THAT SUPPORTS THIS ARGUMENT, THEN YOU NEED

16  TO FIND IT.  BECAUSE I, FRANKLY, DO NOT THINK THAT MR. BUTLER

17  GAVE OFFICER TANABE THE GUN AND THE DRUGS BECAUSE HE WAS

18  INDUCED TO DO SO UNDER COLOR OF LAW.  HE DIDN'T.  HE GAVE IT

19  BECAUSE THAT'S THE AGREEMENT THAT THEY HAD.

20  IF I WERE TO ACCEPT YOUR ARGUMENT, THEN ANY TIME ANY

21  LAW ENFORCEMENT OFFICER IS SOLICITED BY ANY PERSON TO DO

22  ANYTHING IN CONNECTION WITH THEIR AUTHORITY, THEN THAT PERSON

23  WOULD ALWAYS BE -- AND THEN PAID HIM, EVEN IF THE OFFICER GOT

24  NOTHING, EVEN IF THE OFFICER WAS DOING NOTHING BUT LET'S SAY

25  JUST GOING AND DAMAGING -- LET'S SAY A POLICE OFFICER IS

```
1    SOLICITED TO GO AND JUST DO SOMETHING -- KIND OF WHAT LAZARENKO

2    DID, GO AND DAMAGE SOMEONE'S BUSINESS, THE POLICE OFFICER GOES

3    AND ENGAGES IN MASS DESTRUCTION BUT DOESN'T TAKE ANYTHING, THEN

4    THE PERSON PAYS HIM WHAT HE SAID HE WAS GOING TO PAY HIM IN

5    EXCHANGE FOR DOING THAT.  THEN I CAN'T THINK OF ANY OCCASION IN

6    WHICH A POLICE OFFICER IS SOLICITED TO DO ANYTHING UNDER THOSE

7    KINDS OF FACTS THAT THEY WOULDN'T BE CHARGEABLE THEN AS

8    CONSPIRACY WITH THE, I GUESS EVEN AN ABSENCE OF THE OFFICER.

9           HAS MR. TANABE BEEN CHARGED WITH EXTORTION IN THIS

10   PARTICULAR -- WITH THESE PARTICULAR FACTS?

11          MS. WEST:  HE HAS, YOUR HONOR.

12          THE COURT:  SO CHARGED WITH THE OFFICER AS

13   CONSPIRACY TO EXTORT FROM THEM THE PROPERTY THEY HAVE GIVEN IN

14   EXCHANGE FOR THE BUSINESS THEY SOLICITED.  IT IS JUST NOT

15   LOGICAL TO ME.  I DON'T THINK IT IS LEGAL, BUT IT MAY BE.

16          I AM CERTAINLY GOING TO GIVE YOU AN OPPORTUNITY TO

17   FIND SOME AUTHORITY SOMEWHERE THAT SAYS THAT.  BECAUSE IT JUST

18   DOESN'T SIT WELL WITH ME AND I AM NOT PREPARED TO TAKE A GUILTY

19   PLEA FROM A PERSON ON A CRIME THAT I DON'T THINK IS -- HAS BEEN

20   DEMONSTRATED TO ME AS APPROPRIATE.

21          MS. WEST:  WHAT I WOULD PROPOSE, YOUR HONOR, IS

22   THAT -- AND I'M IN THE PROCESS OF HAVING THIS BE DONE WITH

23   COLLEAGUES IN THE SAN FRANCISCO OFFICE, APPARENTLY MY COMPUTER

24   HAD FROZEN, BUT WHAT I WOULD PROPOSE IS TO OMIT THE PLEA TO

25   COUNT SEVEN OF THE PLEA AGREEMENT.  THE FACTS STILL BEING
```

```
1    CONTAINED IN THE FACTUAL BASIS, BUT NOT HAVING THE DEFENDANT,

2    MR. BUTLER, PLEAD TO COUNT SEVEN, AND THAT THE -- WE DELIVER A

3    NEW COPY OF THAT TO THE COURT.

4              I BELIEVE I CAN HAVE THAT WITHIN THE NEXT TEN TO 15

5    MINUTES.  THE COMPUTER ISSUES IN MY OFFICE ARE BEING DEALT

6    WITH, I AM ADVISED.  I DON'T KNOW IF THE COURT HAS

7    FLEXIBILITY --

8              THE COURT:  I DO.  TODAY I DO.

9              MS. WEST:  OKAY.

10             THE COURT:  IF YOU ALL DO, I CERTAINLY DO.  I DON'T

11   KNOW --

12             MR. GAGEN:  NO, NO YOUR HONOR.

13             THE COURT:  OKAY.

14             MR. GAGEN:  MY PREFERENCE WOULD BE TO GET THIS

15   COMPLETED FOR A WHOLE LOT OF REASONS.

16             THE COURT:  I MEAN, YOU WANT TO MAKE SURE THAT IT'S

17   DONE RIGHT.

18             MR. GAGEN:  YES.  ABSOLUTELY.

19             THE COURT:  SO WE'LL -- I HAVE FLEXIBILITY.

20             MS. WEST:  OKAY.  IF THE COURT PREFERS, WE CAN COME

21   BACK IN 15 MINUTES OR IF THE COURT WISHES TO HAVE TIME FOR

22   LUNCH, WE CAN COME BACK AS SOON AS THE COURT TELLS US TO.

23             THE COURT:  LET'S COME BACK AT -- YOU HAVEN'T HAD

24   LUNCH EITHER.  1:30, 1:00?

25             THE CLERK:  IT'S 1:30 NOW.
```

```
 1              THE COURT:  OH, GOSH, HOW TIME FLIES.

 2              MR. GAGEN:  IF SHE HAS A POWER DRINK OR SOMETHING,

 3    WE COULD COME BACK AT 1:30.

 4              THE COURT:  WE WILL SAY 2:15.

 5              MS. WEST:  THANK YOU, YOUR HONOR.

 6              MR. GAGEN:  THANK YOU.

 7              THE COURT:  YOU'RE WELCOME.

 8                   (RECESS TAKEN AT 1:30 P.M.)

 9                   (PROCEEDINGS RESUMED AT 2:25 P.M.)

10              THE CLERK:  WE'RE BACK ON THE RECORD IN CRIMINAL

11    11-529 UNITED STATES OF AMERICA VERSUS CHRISTOPHER BUTLER.

12              THE COURT:  THE RECORD WILL REFLECT THAT MR. BUTLER

13    IS PRESENT WITH HIS COUNSEL.  GOVERNMENT COUNSEL IS ALSO

14    PRESENT.

15              LET'S SEE.  SO I HAVE BEEN HANDED A REVISED PLEA

16    AGREEMENT THAT ELIMINATES COUNT SEVEN.  AND I UNDERSTAND THE

17    GOVERNMENT -- IT'S THE GOVERNMENT'S INTENTION TO DISMISS COUNT

18    SEVEN AT THE TIME OF SENTENCING?

19              MS. WEST:  THAT'S CORRECT, YOUR HONOR.

20              THE COURT:  OKAY.  I THINK YOUR APPLICATION PROBABLY

21    NEEDS TO BE MODIFIED, TOO.

22              MR. GAGEN:  YOUR HONOR, I CHECKED WITH THE

23    GUIDELINE, SUPPOSED GUIDELINE EXPERT, A PROBATION OFFICER.  I

24    DON'T THINK IT CHANGES AT ALL THE --

25              THE COURT:  NO, NO.  I MEAN NUMBER FIVE SAYS, "I AM
```

1    GOING TO BE PLEADING GUILTY TO COUNTS ONE THROUGH EIGHT."

2          SO YOU NEED TO DELETE CHARGE NUMBER SEVEN.  SO LOOK

3    AT -- I THINK IT'S FOUR AND FIVE OF THAT APPLICATION, AND JUST

4    SCRATCH OUT AND MODIFY IT.  I WASN'T REFERRING TO THE

5    GUIDELINES.

6               (DOCUMENT HANDED TO COUNSEL.)

7          **MS. WEST:**  WHILE HE IS DOING THAT, YOUR HONOR, I

8    ALREADY SPOKEN TO DEFENSE COUNSEL ABOUT THIS, BUT I DID TAKE

9    THE OPPORTUNITY TO AMEND IN COUNT ONE THE MAXIMUM PENALTIES TO

10   INCLUDE THE FIVE YEARS TO LIFE ON THE SUPERVISED RELEASE TERM.

11         AND ALSO, AS I MENTIONED TO DEFENSE COUNSEL,

12   PARAGRAPH 2 CONTINUES TO CONTAIN THE FACTS UNDERLYING COUNT

13   SEVEN, HOWEVER, AS STATED IN THE PLEA AGREEMENT, THE GOVERNMENT

14   WILL BE DISMISSING THAT COUNT AT SENTENCING.

15         **THE COURT:**  JUST A SECOND.

16               (PAUSE IN THE PROCEEDINGS.)

17         **MS. WEST:**  WHAT I AM REFERRING TO IS CONTAINED IN

18   THE SECTION CALLED "OTHER CONDUCT" NOW ON PAGE 10.

19         **THE COURT:**  OKAY.

20               (PAUSE IN THE PROCEEDINGS.)

21         **THE COURT:**  I SEE THE "OTHER CONDUCT".

22         IT'S EASIER TO LOOK, THE WAY YOU HAVE IT DRAFTED ON

23   PAGE 10, THE WAY YOU HAVE IT DRAFTED THERE, IT'S EASIER TO LOOK

24   AT THAT, THE WAY YOU HAVE ARTICULATED IT THERE, AND SEE WHY

25   IT'S NOT AN EXTORTION THAT HE'S INVOLVED IN.

```
1          IF YOU NEED ME TO CLARIFY THAT, I WILL DO IT

2    AFTERWARDS.  BUT IT'S VERY CLEAR IN THAT LANGUAGE.  I SEE THAT

3    YOU HAVE IT THERE AS OTHER CONDUCT.

4          OKAY.  SO WE LEFT OFF AT SEVEN, SO WE START AT

5    NUMBER EIGHT.

6               JUST A SECOND.

7                    (PAUSE IN THE PROCEEDINGS.)

8          MS. WEST:  AND I SEE, YOUR HONOR, WHEN YOU JUST SAID

9    THAT, I REALIZE THAT I DID WRITE ON THE FIRST PAGE COUNTS EIGHT

10   AND NINE, BUT THIS ENDS AT COUNT EIGHT.  SO IT SHOULD BE COUNTS

11   ONE THROUGH SIX AND COUNT EIGHT.

12              THE COURT:  YOU ARE TALKING ABOUT THE PLEA

13   AGREEMENT?

14              MS. WEST:  YES, PAGE 1.

15              THE COURT:  THAT'S FINE.

16              MS. WEST:  THIS IS THE OLD VERSION OF THE PLEA

17   AGREEMENT.

18                    (DOCUMENTS HANDED BACK AND FORTH.)

19                    (PAUSE IN THE PROCEEDINGS.)

20              THE COURT:  THANK YOU.  OKAY.  OKAY.

21          MR. BUTLER, TELL ME IN YOUR OWN WORDS WHAT YOU HAVE

22   DONE WHICH MAKES YOU GUILTY OF COUNT EIGHT OF THE SUPERSEDING

23   INFORMATION.

24              THE DEFENDANT:  IN REFERENCE TO COUNT EIGHT, YOUR

25   HONOR, IN MY PRIVATE INVESTIGATIONS FIRM, I WAS HIRED BY
```

1    INDIVIDUALS OR THEIR ATTORNEYS TO PLACE LISTENING DEVICES IN

2    CARS USED BY THE CLIENTS' SPOUSES, SO THAT THE CLIENTS AND/OR

3    THEIR ATTORNEYS COULD LISTEN IN ON THE SPOUSE'S CELL PHONE

4    CONVERSATIONS.

5             I WAS PAID TO DO THIS AND INSTALLED BETWEEN 75 AND

6    100 LISTENING DEVICES OVER A PERIOD OF TEN YEARS.

7             **THE COURT:**  OBVIOUSLY WITHOUT THE CONSENT OF THE

8    PERSONS WHOSE HOMES WERE BEING TAPPED?

9             **THE DEFENDANT:**  IT WAS VEHICLES, YOUR HONOR.

10            **THE COURT:**  OH, VEHICLES.

11            **THE DEFENDANT:**  SOLELY VEHICLES.  YES.

12            **THE COURT:**  YOU DID COMMIT THIS CRIME?

13            **THE DEFENDANT:**  YES, I DID.

14            **THE COURT:**  THAT'S WHY YOU ARE PLEADING GUILTY?

15            **THE DEFENDANT:**  YES, YOUR HONOR.

16            **THE COURT:**  I GUESS STARTING WITH COUNT ONE,

17   MS. WEST, IF YOU'LL PLEASE --

18            **MR. GAGEN:**  YOUR HONOR, EXCUSE ME FOR INTERRUPTING.

19   JUST ONE MINOR CLARIFICATION.

20            IT WAS WITHOUT THE CONSENT OF THE DRIVER OF THE CAR.

21   THESE WERE USUALLY CARS THAT WERE COMMUNITY PROPERTY.  AND THE

22   WIFE WOULD HIRE HIM TO PUT EAVESDROPPING EQUIPMENT SO WHEN THE

23   HUSBAND WAS DRIVING.

24            SO IT'S THE SAME CRIME, BUT IT WASN'T JUST A PHONE

25   TAP.

1          **THE COURT:**  OKAY.  LET ME SEE.

2          THIS WAS ON A CAR THAT BELONGED TO THE PERSON THAT

3   WAS HIRING HIM?

4          **MR. GAGEN:**  AND THE PERSON THAT WAS DRIVING, BUT

5   THEY ARE DIFFERENT PEOPLE.

6          **THE COURT:**  RIGHT.  BUT THE PERSON WHOSE CAR WAS

7   BEING -- THE PERSON WHO HIRED HIM OWNED THE CAR, WAS OWNER OF

8   THE CAR?

9          **MR. GAGEN:**  YES.

10          **THE DEFENDANT:**  YES.

11          **THE COURT:**  SO HE WAS TAPPING A PERSON'S CAR WITH

12   THEIR CONSENT.

13          **THE DEFENDANT:**  YES.

14          **MR. GAGEN:**  YES, BUT NOT THE CONSENT OF THE PERSON

15   WHOSE CONVERSATIONS WERE BEING RECORDED.

16          **THE COURT:**  THANK YOU FOR THAT CLARIFICATION.

17               (PAUSE IN THE PROCEEDINGS.)

18          **MS. WEST:**  IF I MAY, YOUR HONOR.  YOU MAY BE ALREADY

19   LOOKING AT THIS, BUT SUBSECTION (C) AND (D) OF 2511 ARE, I

20   THINK, WHAT IS RELEVANT TO THE COURT'S CONCERN.

21          **THE COURT:**  THAT'S WHAT I AM LOOKING AT.  THANK YOU.

22          THE INFORMATION THAT HE RECEIVED WAS DISCLOSED TO

23   THE PERSON THAT HIRED HIM; IS THAT PART OF THE ALLEGATION, OR

24   DO WE KNOW?

25          **MS. WEST:**  THAT'S NOT PART OF THE ALLEGATION, YOUR

```
1    HONOR.

2                    THE COURT:  THAT'S ALL I AM ASKING RIGHT NOW.

3                    YOU SAID SUBSECTION (C) AND (D) ARE THE TWO THAT ARE

4    RELEVANT HERE?

5                    MS. WEST:  OF SECTION 2511.

6                    THE COURT:  RIGHT.  THAT IS WHAT I AM LOOKING AT.

7                    MS. WEST:  YES.

8                    THE COURT:  SECTION (C) REFERS TO DISCLOSURE OF THE

9    INFORMATION OF THE CONTENTS -- THAT'S WHY I ASKED YOU IF THE

10   INFORMATION WAS DISCLOSED TO ANYONE, AND (D) SAYS USING IT.

11                   MS. WEST:  I AM SORRY.  I AM LOOKING AT 2511.

12                   THE COURT:  RIGHT.

13                   MS. WEST:  (2)(C) AND (D).

14                   THE COURT:  OH, (2).  OKAY.  SO (2)(C) AND (D) ARE

15   THE ONES YOU CHARGED IT UNDER?

16                   MS. WEST:  IT IS CHARGED UNDER 2511(1)(A), HOWEVER,

17   SUBSECTION (2)(C), I THINK, CLARIFIES.  LET ME READ IT --

18                   THE COURT:  YOU DON'T HAVE TO READ IT.  I CAN READ

19   IT.

20                   I AM JUST WANTING TO KNOW WHAT YOUR PREMISE IS SO I

21   CAN LOOK AT THE STATUTE AND SEE IF IT'S HERE.

22                   SO, NOW (1)(A) IS JUST INTERCEPTING IT.  BUT (2) --

23   YOU ARE SAYING (2)(C) AND (D)?  IS THAT WHAT YOU'RE --

24                   MS. WEST:  YES, THOSE DEAL WITH THE --

25                   THE COURT:  I CAN SEE.  I WANT TO KNOW WHAT SECTIONS
```

1    YOU ARE TALKING ABOUT.

2              IS MR. BUTLER A PERSON WHO ACTS UNDER COLOR OF LAW?

3         **MS. WEST:**  NO.

4         **THE COURT:**  OKAY.  YOU ARE SAYING (2)(C) AND (D),

5    RIGHT?

6              (2)(C) SAYS:  "IT SHALL NOT BE UNLAWFUL FOR A PERSON

7    ACTING UNDER COLOR OF LAW TO INTERCEPT A WIRE OR ELECTRONIC

8    COMMUNICATION."

9              THAT'S NOT WHAT YOU ARE TALKING ABOUT, RIGHT?

10         **MS. WEST:**  I AM SORRY.  (D) IS FOR SOMEBODY WHO IS

11   NOT ACTING UNDER COLOR OF LAW.

12         **THE COURT:**  (D) IS THE SECTION YOU ARE PROCEEDING

13   UNDER?

14         **MS. WEST:**  IN TERMS OF THE CONSENT ISSUE, CORRECT.

15         **THE COURT:**  OKAY.

16              OKAY.  SO ARE YOU LOOKING AT -- LOOK AT THE SECTION

17   2511(2)(B)(3)(D); IS THAT THE SECTION YOU ARE REFERRING TO?

18         **MS. WEST:**  I DON'T THINK -- I THINK IT'S (2)(D).

19         **THE COURT:**  IS IT (2)(B)(3)(D)?

20         **MS. WEST:**  NO, YOUR HONOR.

21         **THE COURT:**  THERE IS NO (2)(D).

22              SO, YOU SURE -- PUT SOMETHING -- LET ME LOOK AT WHAT

23   YOU ARE LOOKING AT.

24              WHAT YEAR IS THAT ONE THAT YOU HAVE?

25         **MS. WEST:**  2011, YOUR HONOR.

```
 1              (BOOK HANDED TO COURT.)

 2         THE COURT:  THAT'S (2)(B)(3)(D).  IF YOU LOOK -- (2)

 3    STARTS ON THE PAGE BEFORE.

 4         MS. WEST:  YES.

 5         THE COURT:  AND THEN IT GOES (A)(1).  THEN IT HAS A

 6    LARGE (A), (B).  AND UNDER THAT IS 3, AND THEN (3)(A), (B),

 7    (C), AND FROM WHAT SHE JUST POINTED ME TO IS (D).

 8              SO YOU ARE LOOKING AT THE -- LET ME JUST READ FROM

 9    YOURS.  THE PART THAT SAYS:  "IT SHALL NOT BE UNLAWFUL UNDER

10    THIS CHAPTER FOR A PERSON NOT ACTING UNDER COLOR OF LAW TO

11    INTERCEPT A WIRE, ORAL, OR ELECTRONIC COMMUNICATION WHERE SUCH

12    PERSON IS A PARTY TO THE COMMUNICATION, OR WHERE ONE OF THE

13    PARTIES TO THE COMMUNICATION HAS GIVEN PRIOR CONSENT TO SUCH

14    INTERCEPTION UNLESS SUCH COMMUNICATION IS INTERCEPTED FOR THE

15    PURPOSE OF COMMITTING ANY CRIMINAL OR TORTIOUS ACT IN VIOLATION

16    OF THE CONSTITUTION, OR LAWS OF THE UNITED STATES, OR OF ANY

17    STATE."

18              SO YOU ARE SAYING THIS IS THE ONE YOU ARE PROCEEDING

19    UNDER?

20         MS. WEST:  YES, YOUR HONOR.  BECAUSE THE PARTIES TO

21    THE CONVERSATION -- NEITHER PARTY TO THE CONVERSATION THAT WAS

22    INTERCEPTED GAVE CONSENT.

23         THE COURT:  RIGHT.  SO YOU ARE SAYING YOU ARE

24    PROCEEDING UNDER THE SECTION THAT TALKS ABOUT EXCLUDES

25    LIABILITY, BUT -- AND THEN I GUESS IMPLICITLY SUGGESTING THAT
```

1    THAT MEANS THAT THE OPPOSITE IS A CRIME.

2              **MS. WEST:**  WELL, THAT'S TRUE BECAUSE IT FALLS WITHIN

3    THE PLAIN LANGUAGE OF 2511(1).

4              **THE COURT:**  THAT'S THE ONE I WAS ASKING YOU ABOUT.

5    WHICH SECTION?

6              **MS. WEST:**  I AM RELYING ON SECTION 2511(1), YOUR

7    HONOR, IN CHARGING THE OFFENSE.  HOWEVER, I BELIEVE --

8              **THE COURT:**  (1)(A)(B).

9              **MS. WEST:**  (1)(A).  BUT I BELIEVE LITTLE --

10             **THE COURT:**  (D) IS WHAT YOU WERE PROVIDING JUST FOR

11   CLARIFICATION THAT --

12             **MS. WEST:**  THAT'S CORRECT.

13             **THE COURT:**  -- BOTH -- EITHER -- AND I ASSUME THAT

14   THE PERSON THAT HIRED HIM FOR THESE COMMUNICATIONS WAS NOT A

15   PARTY TO ANY OF THE COMMUNICATIONS THAT HE INTERCEPTED, OR IS

16   THAT ASSUMPTION CORRECT OR NOT?

17             **MS. WEST:**  WELL, THAT PERSON MAY HAVE BEEN ON ONE OF

18   THE CALLS.  I HAVE NO IDEA.  BUT THE BULK OF THE CALLS --

19             **THE COURT:**  YOU HAVE TO HAVE AN IDEA BECAUSE IF THE

20   PERSON THAT HIRED HIM IS A PARTY TO THE COMMUNICATION AND SHE

21   OR HE HAS GIVEN PRIOR CONSENT, THEN IT'S NOT UNLAWFUL.

22             **MS. WEST:**  IF THERE WERE A HUNDRED CALLS, THAT

23   PERSON MAY HAVE BEEN ON ONE, BUT THE OTHER 93 THERE WAS NO

24   PARTY TO THEM.

25             **THE COURT:**  THE OTHER 99?

1          **MS. WEST:**  YES.  THANK YOU.  MY MATH IS LACKING.

2          **THE COURT:**  OKAY.  SO MS. WEST, WHY DON'T YOU

3    PROVIDE FOR THE RECORD, LET'S START WITH COUNT ONE, PROVIDE FOR

4    THE RECORD THE EVIDENCE THAT THE GOVERNMENT IS PREPARED TO

5    PROVE IF THIS MATTER WERE TO GO TO TRIAL.

6          **MS. WEST:**  YES, YOUR HONOR.

7          **THE COURT:**  MR. BUTLER, I WOULD LIKE YOU TO LISTEN

8    TO WHAT SHE'S SAYING THAT THE GOVERNMENT IS PREPARED TO PROVE

9    BECAUSE I AM GOING TO ASK YOU AT THE END WHETHER WHAT SHE HAS

10   SAID IS CORRECT IN TERMS OF YOUR BEHAVIOR OR WHETHER YOU THINK

11   SOMETHING NEEDS TO BE MODIFIED.

12         OKAY?

13         **THE DEFENDANT:**  YES, YOUR HONOR.

14         **MS. WEST:**  THANK YOU, YOUR HONOR.

15         PRELIMINARILY, THE GOVERNMENT WOULD BE PREPARED TO

16   PROVE THAT BETWEEN 2004 AND FEBRUARY 16TH, 2011, THE DEFENDANT

17   OWNED AND OPERATED A PRIVATE INVESTIGATIONS COMPANY CALLED

18   BUTLER & ASSOCIATES LOCATED IN CONCORD, CALIFORNIA, AND THAT

19   THE DEFENDANT'S FRIEND, NORMAN WIELSCH, WAS THE COMMANDER OF

20   THE CENTRAL CONTRA COSTA COUNTY NARCOTICS ENFORCEMENT TASK

21   FORCE, KNOWN AS CNET, BETWEEN APPROXIMATELY JUNE 2004 AND

22   FEBRUARY 16TH, 2011.

23         WITH REGARD TO COUNT ONE, THE GOVERNMENT WOULD BE

24   PREPARED TO PROVE BEYOND A REASONABLE DOUBT THAT BETWEEN AT

25   LEAST NOVEMBER 2010 AND CONTINUING THROUGH FEBRUARY 16TH, 2011,

1    THE DEFENDANT ENTERED INTO AN AGREEMENT WITH WIELSCH TO POSSESS

2    WITH INTENT TO DISTRIBUTE AND TO DISTRIBUTE MARIJUANA AND

3    50 GRAMS OR MORE OF METHAMPHETAMINE AS CHARGED IN COUNT ONE OF

4    THE SUPERSEDING INFORMATION.

5           SPECIFICALLY, THE GOVERNMENT WOULD BE PREPARED TO

6    PROVE THAT IN NOVEMBER 2010, WIELSCH ADVISED THE DEFENDANT THAT

7    WIELSCH HAD OBTAINED MARIJUANA FROM A CNET SEARCH, THAT HE

8    WANTED TO SELL IT TO MAKE MONEY BEFORE RETIRING.

9           THE DEFENDANT THEN ACCEPTED AT LEAST EIGHT TO TEN

10   VACUUM-SEALED PLASTIC BAGS EACH CONTAINING APPROXIMATELY ONE

11   POUND OF MARIJUANA.  THE DEFENDANT THEN AGREED TO SELL THE

12   MARIJUANA AND TO SPLIT THE PROCEEDS EVENLY WITH WIELSCH.

13          IN FURTHERANCE OF THAT AGREEMENT, IN NOVEMBER 2010,

14   THE GOVERNMENT WOULD BE PREPARED TO PROVE THAT THE DEFENDANT

15   PROVIDED ONE OF THE BAGS OF MARIJUANA TO ONE OF THE DEFENDANT'S

16   EMPLOYEES, C.M.; THAT THE DEFENDANT GAVE C.M. THE MARIJUANA TO

17   TRY TO SELL FOR $1,500 PER POUND AND OFFER TO SPLIT HIS HALF OF

18   THE PROCEEDS EVENLY WITH C.M.

19          IN DECEMBER 2010, THE GOVERNMENT WOULD PROVE, THE

20   DEFENDANT RECEIVED PAYMENT FOR THE MARIJUANA FROM C.M., AND

21   GAVE HIM ANOTHER ONE OF THE BAGS OF MARIJUANA TO SELL.

22          ON OR ABOUT JANUARY 26TH, 2011, THE GOVERNMENT WOULD

23   PROVE THE DEFENDANT GAVE C.M. THREE ADDITION BAGS OF THE

24   MARIJUANA TO SELL, AND COMMUNICATED THESE SALES TO WIELSCH AND

25   GAVE WIELSCH HALF OF THE PROCEEDS.

1          THE GOVERNMENT WOULD FURTHER PROVE THAT ON OR ABOUT

2     JANUARY 30TH, 2011, WIELSCH TOLD THE DEFENDANT THAT CNET HAD

3     RECENTLY SEIZED APPROXIMATELY 50 POUNDS OF HIGHER QUALITY

4     MARIJUANA AND ASKED THE DEFENDANT WHETHER HE COULD SELL SOME OF

5     IT.

6          AT WIELSCH'S REQUEST THE DEFENDANT DROVE TO CNET'S

7     OFFICES AND HELPED WIELSCH TAKE APPROXIMATELY 12 POUNDS OF THE

8     HIGHER QUALITY MARIJUANA AND RETURN SOME OF THE MARIJUANA THAT

9     HE HAD -- THAT WIELSCH HAD PREVIOUSLY PROVIDED TO THE

10    DEFENDANT.

11         ON OR ABOUT FEBRUARY 1ST, 2011, THE DEFENDANT GAVE

12    C.M., TWO HALF-POUND BAGS OF THE HIGHER QUALITY MARIJUANA

13    INSTRUCTING HIM TO SELL IT FOR AT LEAST $1,500 PER BAG.

14              **THE COURT:**  WAIT, WAIT.

15                   (PAUSE IN THE PROCEEDINGS.)

16         OKAY.  ARE YOU ON PAGE 6?

17              **MS. WEST:**  I AM.

18              **THE COURT:**  LINE 24?

19              **MS. WEST:**  21.

20              **THE COURT:**  OKAY.  GO ON.

21              **MS. WEST:**  THE DEFENDANT ALSO GAVE C.M. TWO VIALS OF

22    STEROIDS THAT HE HAD OBTAINED FROM WIELSCH FOR SALE.

23         ON OR ABOUT FEBRUARY 2ND, 2011, C.M. PAID THE

24    DEFENDANT $1,850 FOR THE PREVIOUS DAY'S MARIJUANA SALE AND $90

25    FOR THE STEROID VIALS.

1          ON OR ABOUT FEBRUARY 8, 2011, THE GOVERNMENT WOULD

2    PROVE THE DEFENDANT GAVE C.M. ANOTHER ONE-POUND BAG OF

3    MARIJUANA TO SELL AS WELL AS 13 VIALS OF ANABOLIC STEROIDS THAT

4    WIELSCH HAD ASKED THE DEFENDANT TO TRY TO SELL ALONG WITH

5    SUGGESTED SALE PRICES.

6          THE DEFENDANT ADVISED C.M., AS WIELSCH HAD

7    INSTRUCTED THE DEFENDANT, THAT CNET HAD -- AS WIELSCH HAD

8    INFORMED THE DEFENDANT, THAT CNET HAD SEIZED APPROXIMATELY

9    THREE POUNDS OF METHAMPHETAMINE, WHICH WOULD SOON BE DESTROYED.

10         THE GOVERNMENT WOULD PROVE THAT ON OR ABOUT

11   FEBRUARY 11TH, 2011, C.M. PAID THE DEFENDANT $2,325 FOR THE

12   MARIJUANA AND STEROIDS WHICH THE DEFENDANT SPLIT EVENLY WITH

13   WIELSCH.  DURING THAT MEETING, THE GOVERNMENT WOULD PROVE C.M.

14   TOLD THE DEFENDANT THAT HE HAD A POTENTIAL BUYER FOR THE

15   METHAMPHETAMINE AT $10,000 PER POUND.

16         AFTER THE DEFENDANT COMMUNICATED THAT INFORMATION TO

17   WIELSCH, WIELSCH AND THE DEFENDANT AGREED TO PICK UP THE

18   METHAMPHETAMINE.

19         THE GOVERNMENT WOULD PROVE THAT IN FURTHERANCE OF

20   THAT AGREEMENT, ON FEBRUARY 15TH, 2011, THE DEFENDANT MET

21   WIELSCH AT CNET'S OFFICE AND DROVE WITH HIM TO THE CONTRA COSTA

22   COUNTY SHERIFF'S EVIDENCE FACILITY WHERE THEY PICKED UP THE

23   METHAMPHETAMINE.  WIELSCH AND THE DEFENDANT THEN DROVE TO THE

24   LANDFILL FOR OSTENSIBLE DESTRUCTION OF THE METHAMPHETAMINE.  AT

25   THE LANDFILL, THE DEFENDANT AND WIELSCH DISPOSED OF SOME OF THE

1    MARIJUANA, BUT NONE OF THE METHAMPHETAMINE.

2              WIELSCH AND THE DEFENDANT THEN DROVE BACK TO THE

3    DEFENDANT'S OFFICE, MET UP WITH C.M., AND SOLD HIM A PACKAGE OF

4    METHAMPHETAMINE WRAPPED IN THE FORM OF A BURRITO AT AN AGREED

5    UPON PRICE OF $9,800.  THE DEFENDANT GAVE $5,000 TO WIELSCH AND

6    ACCEPTED $2,500 FOR HIMSELF.  C.M. KEPT THE REMAINDER.

7              THE GOVERNMENT WOULD BE PREPARED TO PROVE THAT

8    WIELSCH POSSESSED A FIREARM DURING THAT DRUG TRANSACTION, AND

9    FURTHER THAT THE NET WEIGHT OF THE METHAMPHETAMINE SOLD TO C.M.

10   WAS APPROXIMATELY 435.4 GRAMS WITH PURITY OF APPROXIMATELY

11   93.7 PERCENT.

12             THE DEFENDANT RETAINED IN HIS TRUNK ANOTHER BAG OF

13   METHAMPHETAMINE WHICH THE GOVERNMENT WOULD PROVE HAD A NET

14   WEIGHT OF APPROXIMATELY 131.3 GRAMS AND A PURITY OF

15   APPROXIMATELY 15.1 PERCENT.

16             THAT METHAMPHETAMINE WAS SEIZED DURING A SEARCH BY

17   STATE LAW ENFORCEMENT AUTHORITIES ON FEBRUARY 16TH, 2011.  ALSO

18   SEIZED DURING THAT SEARCH WERE MORE THAN 4,500 GRAMS OF

19   MARIJUANA, 196 BOTTLES OF STEROIDS, 2,000 TABLETS OF AN

20   ANABOLIC STEROID, 106 CODEINE TABLETS AND 1,956 EPHEDRINE

21   TABLETS.

22             THE GOVERNMENT WOULD PROVE THAT ALL OF THESE DRUGS

23   THE DEFENDANT OBTAINED FROM WIELSCH IN FURTHERANCE OF THEIR

24   AGREEMENT TO DISTRIBUTE NARCOTICS.

25             **THE COURT:**  THANK YOU.

1          MR. BUTLER, WERE YOU ABLE TO HEAR THE EVIDENCE THE

2   GOVERNMENT'S INDICATED IT IS PREPARED TO PROVE WITH RESPECT TO

3   COUNT ONE IF THIS MATTER WERE TO GO TO TRIAL?

4          **THE DEFENDANT:**  YES, YOUR HONOR.

5          **THE COURT:**  IS THERE ANYTHING THAT SHE SAID THAT IS

6   INCORRECT ABOUT YOUR BEHAVIOR?

7          **THE DEFENDANT:**  NO, YOUR HONOR.

8          **THE COURT:**  AND YOU DID COMMIT THIS CRIME?

9          **THE DEFENDANT:**  YES, YOUR HONOR.

10          **THE COURT:**  WILL YOU PLEASE PRESENT FOR THE RECORD

11   THE EVIDENCE THE GOVERNMENT IS PREPARED TO PROVE WITH RESPECT

12   TO COUNT TWO IF THIS WERE TO GO TO TRIAL?

13          **MS. WEST:**  YES.

14          THE GOVERNMENT WOULD BE PREPARED TO PROVE THAT ON OR

15   ABOUT FEBRUARY 15TH, 2011, THE DEFENDANT KNOWINGLY AND

16   INTENTIONALLY ASSISTED WIELSCH IN STEALING, OBTAINING BY FRAUD,

17   OR OTHERWISE WITHOUT AUTHORITY CONVERTING TO THEIR OWN USE

18   METHAMPHETAMINE THAT HAD BEEN SEIZED BY CNET DURING A LAW

19   ENFORCEMENT OPERATION AS CHARGED IN COUNT TWO OF THE

20   SUPERSEDING INFORMATION.

21          THE GOVERNMENT WOULD PROVE THAT THE METHAMPHETAMINE

22   WAS UNDER THE CARE, CUSTODY, AND CONTROL OF CNET AND THE CONTRA

23   COSTA COUNTY SHERIFF'S EVIDENCE FACILITY, AND THAT THE VALUE OF

24   THE METHAMPHETAMINE THEY TOOK EXCEEDED $30,000 BUT WAS LESS

25   THAN $70,000.

```
1              THE GOVERNMENT WOULD PROVE THAT CNET IS A REGIONAL

2    TASK FORCE OPERATED BY THE CALIFORNIA DEPARTMENT OF JUSTICE

3    BUREAU OF NARCOTICS ENFORCEMENT WHICH RECEIVED MORE THAN

4    $10,000 IN FEDERAL FUNDS DURING THE ONE-YEAR PERIOD OF

5    FEBRUARY 15TH, 2010 TO FEBRUARY 15TH, 2011.  THE GOVERNMENT

6    WOULD FURTHER PROVE THAT WIELSCH POSSESSED A FIREARM DURING

7    THAT THEFT.

8              THE COURT:  OKAY.

9              MR. BUTLER, WERE YOU ABLE TO HEAR THE GOVERNMENT'S

10   PROFFER WITH RESPECT TO COUNT TWO?

11             THE DEFENDANT:  YES, YOUR HONOR.

12             THE COURT:  IS THERE ANYTHING YOU NEED TO CORRECT

13   ABOUT WHAT SHE SAID IN TERMS OF YOUR INVOLVEMENT IN THIS CRIME?

14             THE DEFENDANT:  NO, YOUR HONOR.

15             THE COURT:  AGAIN, YOU DID COMMIT THIS CRIME?

16             THE DEFENDANT:  YES, YOUR HONOR.

17             THE COURT:  THANK YOU.

18             WITH RESPECT TO COUNT THREE, WILL YOU PLEASE PRESENT

19   THE SAME INFORMATION?

20             MS. WEST:  YES, YOUR HONOR.

21             THE GOVERNMENT WOULD BE PREPARED TO PROVE THAT FROM

22   APPROXIMATELY JANUARY 2009 THROUGH ON OR ABOUT FEBRUARY 6TH,

23   2009, THE DEFENDANT KNOWINGLY AND INTENTIONALLY AGREED WITH

24   WIELSCH AND OTHERS TO DEPRIVE AN INDIVIDUAL, F.S., OF HIS RIGHT

25   AGAINST UNREASONABLE SEARCHES AND SEIZURES AND HIS RIGHT
```

1    AGAINST DEPRIVATION OF LIBERTY AND PROPERTY WITHOUT DUE PROCESS

2    OF LAW AS CHARGED IN COUNT THREE OF THE SUPERSEDING

3    INFORMATION.

4            AS PART OF THAT CONSPIRACY, THE GOVERNMENT WOULD

5    PROVE THAT THE DEFENDANT WAS HIRED BY F.S.'S MOTHER TO CONDUCT

6    A STING OPERATION AGAINST F.S. IN AN ATTEMPT TO DETER HIM FROM

7    SELLING ILLEGAL DRUGS.

8            THE DEFENDANT ENLISTED WIELSCH AND MORE THAN THREE

9    OTHER INDIVIDUALS TO PARTICIPATE IN THAT STING WHICH WAS TO

10   INVOLVE A STAGED ARREST OF F.S. DURING A DRUG TRANSACTION IN

11   CNET'S PARKING LOT.

12           SPECIFICALLY, THE GOVERNMENT WOULD PROVE THAT THE

13   DEFENDANT INSTRUCTED TWO WOMEN WHO WERE WORKING FOR THE

14   DEFENDANT TO DEVELOP A RELATIONSHIP WITH F.S. AND THEREAFTER TO

15   ARRANGE TO HAVE F.S. SELL ECSTASY TO THEIR FRIEND FOR $600.

16           ON FEBRUARY 6TH, THE WOMEN WERE TO MEET UP WITH

17   F.S., ARRANGE TO HAVE HIM DRIVE HIS CAR AND ACCOMPANY HIM TO

18   THE ECSTASY SALE WHICH WOULD OCCUR IN THE CNET PARKING LOT.

19           THE GOVERNMENT WOULD PROVE THAT WIELSCH AND THE

20   DEFENDANT AGREED THAT UPON THEIR ARRIVAL, WIELSCH WOULD DRIVE

21   UP WEARING HIS LOADED FIREARM, AND THE DEFENDANT WOULD HANDCUFF

22   AND INTERROGATE F.S.  WIELSCH AND THE DEFENDANT FURTHER AGREED

23   THAT THEY WOULD BOTH PARTICIPATE IN SEARCHING F.S.'S CAR AND

24   HOME.

25           AS PART OF THAT CONSPIRACY, F.S. WAS HANDCUFFED,

1    PLACED IN THE BACK OF A CAR AND INTERROGATED AND HIS POCKETS,

2    CAR, AND BEDROOM SEARCHED.  THE GOVERNMENT WOULD PROVE THAT

3    WIELSCH AND THE DEFENDANT SEIZED AND MAINTAINED THOUSANDS OF

4    XANAX PILLS THAT THEY FOUND DURING THOSE SEARCHES.  AT THE

5    CONCLUSION OF THE SEARCH, F.S. WAS RELEASED FROM HIS HANDCUFFS.

6    THE DEFENDANT RECEIVED $3,500 FOR THAT STING OPERATION OF WHICH

7    HE GAVE WIELSCH $1,000.

8              **THE COURT:**  THANK YOU.

9              MR. BUTLER, WERE YOU ABLE TO HEAR THE EVIDENCE THE

10   GOVERNMENT IS INDICATING THEY ARE PREPARED TO PROVE IF THIS

11   MATTER WERE TO GO TO TRIAL WITH RESPECT TO COUNT THREE?

12             **THE DEFENDANT:**  YES, YOUR HONOR.

13             **THE COURT:**  IS THERE ANYTHING THAT SHE SAID THAT YOU

14   NEED TO CORRECT OR THAT IS WRONG?

15             **THE DEFENDANT:**  NO, YOUR HONOR.

16             **THE COURT:**  EVERYTHING THAT SHE SAID IS CORRECT IN

17   TERMS OF YOUR BEHAVIOR?

18             **THE DEFENDANT:**  YES, YOUR HONOR.

19             **THE COURT:**  AGAIN, YOU DID COMMIT THIS CRIME?

20             **THE DEFENDANT:**  YES, YOUR HONOR.

21             **THE COURT:**  OKAY.

22             AND COUNT FOUR, COUNSEL?

23             **MS. WEST:**  THE GOVERNMENT WOULD BE PREPARED TO PROVE

24   THAT FROM APPROXIMATELY JANUARY 2010 THROUGH APPROXIMATELY

25   AUGUST 2010, THE DEFENDANT KNOWINGLY AND INTENTIONALLY AGREED

```
1    WITH WIELSCH TO DEPRIVE PERSONS ENGAGED IN THE BUSINESS OF

2    PROSTITUTION OF THEIR RIGHTS AGAINST UNREASONABLE SEARCHES AND

3    SEIZURES AND THEIR RIGHTS AGAINST DEPRIVATION OF PROPERTY

4    WITHOUT DUE PROCESS OF LAW AS CHARGED IN COUNT FOUR OF THE

5    SUPERSEDING INFORMATION.

6            THE GOVERNMENT WOULD PROVE THAT AS PART OF THAT

7    CONSPIRACY, WIELSCH FOUND PROSTITUTES THROUGH ONLINE

8    ADVERTISEMENTS, SUCH AS CRAIG'S LIST AND REDBOOK, AND ARRANGED

9    MEETINGS WITH THEM, USUALLY IN HOTELS.  ON APPROXIMATELY TEN

10   OCCASIONS, THE GOVERNMENT WOULD PROVE, THE DEFENDANT

11   ACCOMPANIED WIELSCH TO MEET THE WOMEN AT HOTEL ROOMS IN

12   SAN RAMON, CALIFORNIA AND OTHER TOWNS IN THE NORTHERN DISTRICT

13   OF CALIFORNIA.

14           TYPICALLY, THE DEFENDANT WOULD GO TO THE ROOM AND

15   KNOCK, WHILE WIELSCH WOULD PUSH HIS WAY IN BEHIND THE DEFENDANT

16   AFTER THE DOOR WAS OPEN, DISPLAY HIS BADGE, AND STATE THAT HE

17   WAS A LAW ENFORCEMENT OFFICER.

18           THE GOVERNMENT WOULD PROVE THAT WIELSCH AND THE

19   DEFENDANT WOULD THEN TAKE CELL PHONES, MONEY, AND SOMETIMES

20   COMPUTERS OR OTHER PROPERTY FROM THE WOMEN BEFORE THEY LEFT THE

21   ROOM.  THE DEFENDANT AND WIELSCH DID NOT ISSUE CITATIONS OR

22   PROPERTY RECEIPTS DURING THESE ENCOUNTERS.

23           THE GOVERNMENT WOULD PROVE THAT WIELSCH AND THE

24   DEFENDANT SPLIT THE CASH PROCEEDS FROM THESE RAIDS AND THAT THE

25   DEFENDANT RETAINED THE CELL PHONES IN HIS OFFICE.
```

| 1 | **THE COURT:**  OKAY.  THANK YOU. |

1    **THE COURT:**  OKAY.  THANK YOU.

2    MR. BUTLER, WERE YOU ABLE TO HEAR THE EVIDENCE SHE'S

3    INDICATING WITH RESPECT TO COUNT FOUR?

4    **THE DEFENDANT:**  YES, YOUR HONOR.

5    **THE COURT:**  IS THERE ANYTHING THAT IS INCORRECT

6    ABOUT WHAT SHE SAID?

7    **THE DEFENDANT:**  NO, YOUR HONOR.

8    **THE COURT:**  OKAY.  YOU DID COMMIT THIS CRIME AS

9    WELL.

10   **THE DEFENDANT:**  YES, YOUR HONOR.

11   **THE COURT:**  THANK YOU.

12   COUNSEL, COUNT FIVE.

13   **MS. WEST:**  WITH REGARD TO COUNT FIVE, THE GOVERNMENT

14   WOULD BE PREPARED TO PROVE THAT IN OR ABOUT JULY OR

15   AUGUST 2010, THE DEFENDANT KNOWINGLY AND INTENTIONALLY ROBBED

16   AND CONSPIRED TO ROB TWO INDIVIDUALS J.H. AND S.P. IN

17   SAN RAMON, CALIFORNIA AS CHARGED IN COUNT FIVE OF THE

18   SUPERSEDING INFORMATION.

19   SPECIFICALLY, AS PART OF THEIR CONSPIRACY TO TAKE

20   CELL PHONES AND MONEY FROM PROSTITUTES, WIELSCH AND THE

21   DEFENDANT WENT TO A ROOM AT THE HOMESTEAD SUITES HOTEL IN

22   SAN RAMON WHERE THEY MET A PROSTITUTE AND HER MADAME J.H.

23   WIELSCH AND THE DEFENDANT IDENTIFIED THEMSELVES AS

24   POLICE OFFICERS AND TOOK CASH, TWO CELL PHONES, AND A SET OF

25   CAR KEYS FROM J.H. AND A MAN WITH WHOM SHE WAS TRAVELING, S.P.

1          THE GOVERNMENT WOULD BE PREPARED TO PROVE THAT THEY

2   TOOK MORE THAN $10,000 COLLECTIVELY FROM J.H., S.P., AND OTHERS

3   IN THE COURSE OF THEIR PROSTITUTION ROBBERIES.

4          THE GOVERNMENT WOULD FURTHER PROVE THAT THESE

5   ROBBERIES AFFECTED INTERSTATE COMMERCE.

6          **THE COURT:**  THANK YOU.

7          MR. BUTLER, WERE YOU ABLE TO HEAR THE EVIDENCE THE

8   GOVERNMENT'S INDICATING SHE'S PREPARED TO PROVE WITH RESPECT TO

9   COUNT FIVE?

10          **THE DEFENDANT:**  YES, YOUR HONOR.

11          **THE COURT:**  IS THERE ANYTHING THAT SHE SAID THAT IS

12   INCORRECT IN TERMS OF YOUR INVOLVEMENT IN THIS CRIME?

13          **THE DEFENDANT:**  NO, YOUR HONOR.

14          **THE COURT:**  YOU DID COMMIT THIS CRIME?

15          **THE DEFENDANT:**  YES, YOUR HONOR.

16          **THE COURT:**  OKAY.

17          COUNSEL, WILL YOU PLEASE PRESENT THE INFORMATION THE

18   GOVERNMENT IS PREPARED TO PROVE WITH RESPECT TO COUNT SIX?

19          **MS. WEST:**  YES, YOUR HONOR.

20          THE GOVERNMENT WOULD BE PREPARED TO PROVE THAT FROM

21   APPROXIMATELY NOVEMBER 2009 THROUGH APPROXIMATELY APRIL 2010,

22   THE DEFENDANT KNOWINGLY AND INTENTIONALLY EXTORTED AND

23   CONSPIRED TO EXTORT PERSONS OPERATING AN ELICIT MASSAGE PARLOR

24   AS CHARGED IN COUNT SIX OF THE SUPERSEDING INFORMATION.

25          SPECIFICALLY, IN APPROXIMATELY NOVEMBER 2009, THE

1   DEFENDANT AGREED WITH WIELSCH AND OTHERS TO ESTABLISH A MASSAGE

2   PARLOR IN PLEASANT HILL, CALIFORNIA WHERE THE MASSEUSES WOULD

3   PERFORM SEXUAL SERVICES.  THE GOVERNMENT WOULD BE PREPARED TO

4   PROVE THAT THE DEFENDANT KNEW, IN FURTHERANCE OF THAT

5   AGREEMENT, THAT WIELSCH HAD AGREED TO USE HIS ROLE AT CNET TO

6   PROTECT THE MASSAGE PARLOR FROM RAIDS, WHICH CNET WAS AT THAT

7   TIME CONDUCTING AGAINST SUCH BUSINESSES.

8           IN EXCHANGE FOR WIELSCH'S PROTECTION, THE DEFENDANT

9   COLLECTED WEEKLY PAYMENTS FROM THE WOMEN WORKING AT THE MASSAGE

10  PARLOR.  THE GOVERNMENT WOULD BE PREPARED TO PROVE THAT THE

11  DEFENDANT COLLECTED A TOTAL OF MORE THAN $10,000 WHICH HE THEN

12  SHARED WITH WIELSCH AND, FURTHER, THAT THOSE ACTS AFFECTED

13  INTERSTATE COMMERCE.

14          **THE COURT:**  OKAY.  THANK YOU.

15          MR. BUTLER, WERE YOU ABLE TO HEAR THE EVIDENCE THE

16  GOVERNMENT'S INDICATED SHE'S PREPARED TO PROVE WITH RESPECT TO

17  COUNT SIX?

18          **THE DEFENDANT:**  YES, YOUR HONOR.

19          **THE COURT:**  IS THERE ANYTHING ABOUT WHAT SHE SAID

20  THAT IS INCORRECT?

21          **THE DEFENDANT:**  NO, YOUR HONOR.

22          **THE COURT:**  IS WHAT SHE SAID SUBSTANTIALLY CORRECT

23  IN TERMS OF YOUR BEHAVIOR?

24          **THE DEFENDANT:**  YES, YOUR HONOR.

25          **THE COURT:**  AND YOU DID COMMIT THIS CRIME?

1        **THE DEFENDANT:**  YES, YOUR HONOR.

2        **THE COURT:**  FINALLY, COUNSEL, COUNT EIGHT.

3        **MS. WEST:**  YES.

4        WITH REGARD TO COUNT EIGHT, THE GOVERNMENT WOULD BE

5    PREPARED TO PROVE THAT FROM AT LEAST AUGUST 2007 THROUGH NO

6    LATER THAN FEBRUARY 2011, THE DEFENDANT KNOWINGLY AND

7    INTENTIONALLY INTERCEPTED AND ENDEAVORED TO INTERCEPT CELLULAR

8    PHONE COMMUNICATIONS IN THE NORTHERN DISTRICT OF CALIFORNIA AS

9    CHARGED IN COUNT EIGHT OF THE SUPERSEDING INFORMATION.

10        SPECIFICALLY, AT THE REQUEST OF CLIENTS AND/OR THEIR

11    ATTORNEYS, THE DEFENDANT INSTALLED LISTENING DEVICES IN

12    VEHICLES USED BY THE CLIENTS' SPOUSES.  THE DEFENDANT KNEW AND

13    INTENDED THAT HIS CLIENTS AND/OR THEIR ATTORNEYS WOULD BE ABLE

14    TO USE SUCH DEVICES TO LISTEN SECRETLY TO THE SPOUSE'S CELLULAR

15    TELEPHONE CONVERSATIONS IN THEIR VEHICLES.

16        THE DEFENDANT INSTALLED ONE SUCH LISTENING DEVICE ON

17    OR ABOUT AUGUST 9TH, 2007 FOR THE PURPOSE OF LISTENING TO

18    TELEPHONE COMMUNICATIONS BY N.F.  IN TOTAL, THE GOVERNMENT

19    WOULD PROVE THAT THE DEFENDANT INSTALLED APPROXIMATELY 75 TO

20    100 SUCH INTERCEPTION DEVICES.

21        MOREOVER, THE GOVERNMENT WOULD BE PREPARED TO PROVE

22    THAT THE DEFENDANT INSTALLED THESE DEVICES FOR ECONOMIC GAIN.

23        **THE COURT:**  OKAY.

24        MR. BUTLER, WERE YOU ABLE TO HEAR THE EVIDENCE

25    GOVERNMENT IS INDICATING IT'S PREPARED TO PROVE WITH RESPECT TO

```
1    COUNT EIGHT?

2              THE DEFENDANT:  YES, YOUR HONOR.

3              THE COURT:  DO YOU ALSO AGREE THAT THESE TELEPHONE

4    COMMUNICATIONS THAT WERE INTERCEPTED WERE, FOR THE MOST PART,

5    OR -- I GUESS 99 OF THE HUNDRED TELEPHONE CALLS THAT WERE

6    INTERCEPTED WERE NOT OF INDIVIDUALS WHO HAD CONSENTED TO YOUR

7    INTERCEPTING?

8              THE DEFENDANT:  YES, YOUR HONOR.

9              THE COURT:  AND YOU DID COMMIT THIS CRIME?

10             THE DEFENDANT:  YES, YOUR HONOR.

11             THE COURT:  YOU'VE BEEN REPRESENTED -- DO YOU NEED

12   SOME WATER?

13             THE DEFENDANT:  YES.

14                  (PAUSE IN THE PROCEEDINGS.)

15             THE COURT:  YOU'VE BEEN REPRESENTED IN THIS MATTER

16   BY MR. GAGEN; IS THAT CORRECT?

17             THE DEFENDANT:  YES, YOUR HONOR.

18             THE COURT:  HAS MR. GAGEN GIVEN YOU ALL OF THE LEGAL

19   ADVICE YOU HAVE NEEDED OR WANTED?

20             THE DEFENDANT:  YES.

21             THE COURT:  HAS MR. GAGEN DONE ANYTHING WHICH YOU

22   HAVE PREVIOUSLY OBJECTED TO OR OBJECT TO NOW?

23             THE DEFENDANT:  NO, YOUR HONOR.

24             THE COURT:  ARE YOU SATISFIED WITH THE LEGAL

25   REPRESENTATION YOUR ATTORNEY HAS PROVIDED YOU?
```

1          **THE DEFENDANT:**  YES, YOUR HONOR.

2          **THE COURT:**  DO YOU NEED TO OBTAIN ANY FURTHER LEGAL

3     ADVICE FROM YOUR COUNSEL NOW BEFORE THE COURT ACCEPTS YOUR

4     GUILTY PLEA?

5          **THE DEFENDANT:**  NO, YOUR HONOR.

6          **THE COURT:**  STARTING WITH COUNT ONE, WHICH CHARGES

7     YOU WITH A VIOLATION OF TITLE 21, UNITED STATES CODE, SECTIONS

8     846 AND 841(B)(1)(A)(VIII) AND 841(B)(1)(D), CONSPIRACY TO

9     POSSESS WITH INTENT TO DISTRIBUTE AND TO DISTRIBUTE A

10    SCHEDULE I CONTROLLED SUBSTANCE, MARIJUANA, AND A SCHEDULE II

11    CONTROLLED SUBSTANCE 50 GRAMS OR MORE OF METHAMPHETAMINE, HOW

12    DO YOU PLEAD, GUILTY OR NOT GUILTY?

13         **THE DEFENDANT:**  GUILTY, YOUR HONOR.

14         **THE COURT:**  WITH RESPECT TO COUNT TWO THAT CHARGES

15    YOU WITH AIDING AND ABETTING THEFT FROM PROGRAMS RECEIVING

16    FEDERAL FUNDS IN VIOLATION OF TITLE 18, UNITED STATES CODE,

17    SECTIONS 666(A)(1) AND 2, HOW DO YOU PLEAD, GUILTY OR NOT

18    GUILTY?

19         **THE DEFENDANT:**  GUILTY, YOUR HONOR.

20         **THE COURT:**  WITH RESPECT TO COUNTS THREE AND FOUR

21    WHICH ALLEGE A VIOLATION OF TITLE 18, UNITED STATES CODE,

22    SECTION 241, CONSPIRACY AGAINST RIGHTS, HOW DO YOU PLEAD,

23    GUILTY OR NOT GUILTY?

24         **THE DEFENDANT:**  GUILTY, YOUR HONOR.

25         **THE COURT:**  WITH RESPECT TO COUNT FIVE THAT ALLEGES

1    A VIOLATION OF TITLE 18, UNITED STATES CODE, SECTION 1951,

2    CHARGING YOU WITH HOBBS ACT ROBBERY, HOW DO YOU PLEAD, GUILTY

3    OR NOT GUILTY?

4              **THE DEFENDANT:**  GUILTY, YOUR HONOR.

5              **THE COURT:**  WITH RESPECT TO COUNT SIX THAT CHARGES

6    YOU WITH EXTORTION UNDER COLOR OF OFFICIAL RIGHT IN VIOLATION

7    OF TITLE 18, UNITED STATES CODE, SECTION 1951, HOW DO YOU

8    PLEAD, GUILTY OR NOT GUILTY?

9              **THE DEFENDANT:**  GUILTY, YOUR HONOR.

10             **THE COURT:**  WITH RESPECT TO COUNT EIGHT THAT ALLEGES

11   ILLEGAL WIRETAPPING IN VIOLATION OF TITLE 18, UNITED STATES

12   CODE, SECTION 2511 SECTION (1)(A) AND (4)(A), HOW DO YOU PLEAD,

13   GUILTY OR NOT GUILTY?

14             **THE DEFENDANT:**  GUILTY, YOUR HONOR.

15             **THE COURT:**  THE COURT FINDS THE DEFENDANT HAS

16   KNOWINGLY, VOLUNTARILY, AND INTELLIGENTLY WITH THE ADVICE OF

17   HIS ATTORNEY ENTERED GUILTY PLEAS.

18             THE COURT FURTHER FINDS THAT THE ELEMENTS SUPPLIED

19   TO SUPPORT A CONVICTION UNDER TITLE 21, UNITED STATES CODE,

20   SECTION 846 AND 841 (B)(1)(A)(VIII) AND 841 (B)(1)(D), TITLE

21   18, SECTION 666(A)(1) AND 2, TITLE 18, SECTION 241, CONSPIRACY

22   AGAINST RIGHTS, TITLE 18, UNITED STATES CODE, SECTION 1951,

23   HOBBS ACT ROBBERY AND THE SAME TITLE 18, UNITED STATES CODE,

24   1951, EXTORTION UNDER COLOR OF RIGHT, AND ILLEGAL WIRETAPPING

25   IN VIOLATION OF 18, U.S.C SECTION 2551(1)(A) AND (4)(A) HAVE

1    BEEN SATISFIED.

2              THE COURT FURTHER FINDS THAT THERE IS A SUFFICIENT

3    FACTUAL BASIS TO SUPPORT THE GUILTY PLEAS, THE COURT ACCEPTS

4    THE GUILTY PLEAS, THE COURT ACCEPTS THE PLEA AGREEMENT.

5              SO IS THERE ANYTHING FURTHER BEFORE REMANDING

6    MR. BUTLER INTO THE CUSTODY OF THE UNITED STATES MARSHAL?

7              **MR. GAGEN:**  JUST THIS, YOUR HONOR.  THERE IS A

8    SUBSTANTIAL SURETY POSTED WITH THE FEDERAL COURT, AND I WOULD

9    ASK THAT THAT BE EXONERATED FORTHWITH.

10             **THE COURT:**  IS THERE ANY OBJECTION?

11             **MS. WEST:**  THERE IS NOT.

12             **THE COURT:**  OKAY.  THEN JUST SUBMIT A PROPOSED ORDER

13   IF YOU WANT IT EXONERATED NOW.

14             NORMALLY, ONCE THE SENTENCING TRANSPIRES, WE INCLUDE

15   IT IN THE JUDGMENT.  BUT IF YOU WANT IT DONE BEFORE THAT, JUST

16   SUBMIT A PROPOSED ORDER.  IF THERE IS NO OBJECTION, THAT WILL

17   BE FINE.

18             **MR. GAGEN:**  CAN I -- I GUESS IN THE ORDER I CAN

19   PHRASE IT THAT IT WAS DONE BY STIPULATION, RIGHT?

20             **MS. WEST:**  THAT'S FINE.

21             **THE COURT:**  THAT'S FINE.

22             **MR. GAGEN:**  THANK YOU.

23             **THE COURT:**  ANYTHING FURTHER?

24             **MS. WEST:**  NO.  I THANK THE COURT FOR ITS CAREFUL

25   ATTENTION TO THIS.

1          **MR. GAGEN:**  THANK YOU FOR YOUR PATIENCE.

2          **THE COURT:**  YOU'RE WELCOME.

3          AND MR. BUTLER IS REMANDED INTO THE CUSTODY OF THE

4   UNITED STATES MARSHAL.

5          YOU ALL HAVE A GOOD EVENING.

6          (PROCEEDINGS ADJOURNED AT 3:00 P.M.)

### CERTIFICATE OF REPORTER

I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS IN CR-11-0592 SBA, UNITED STATES VERSUS CHRISTOPHER BUTLER, PAGES NUMBERED 1 THROUGH 90, WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.


/S/ DIANE E. SKILLMAN

DIANE E. SKILLMAN, CSR 4909, RPR, FCRR